Daniel J McCauley III
McCauley Law Offices, P.C.
6638 E Ashler Hills Dr
Cave Creek, AZ 85331-6638
Direct: (480) 595-1378
Fax: (866) 388-3788 | Email: dan@mlo-az.com

*Attorneys for Defendants*
*Tom Crosby, Ann English, and Peggy Judd,*
*In their official capacities as the Cochise County Board of Supervisors*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KATIE HOBBS, in her official capacity as Arizona Secretary of State, <br><br> Plaintiffs, <br><br> v. <br><br> TOM CROSBY, ANN ENGLISH, PEGGY JUDD, in their official capacities as members of the Cochise County Board of Supervisors, and COCHISE COUNTY, a political Subdivision of Arizona <br><br> Defendants. | Case No.: <br><br> **NOTICE OF REMOVAL** <br><br> State Court Case No.: CV 202200553 |

To Plaintiff Katie Hobbs, in her official capacity as Arizona Secretary of State (collectively "Plaintiffs"):

PLEASE TAKE NOTICE THAT pursuant 28 U.S.C. § 1441(a), defendants Tom Crosby, Ann English, and Peggy Judd, in their official capacities as the Cochise County Board of Supervisors (collectively "Defendants"), removes case CV2022005523 from Superior Court of the State of Arizona in and for the County of Cochise to the United States District Court for the Eastern District of Arizona.

Removal is required pursuant to the jurisdiction placed on the Federal Courts by 28 U.S.C. § 1331 et. seq. by a federal question raised on the face of Plaintiff's complaint of

whether or not the machines were tested by approved laboratories accredited under the Help America Vote act of 2002, pursuant to Ariz. Rev. Stat. § 16-442.

## GROUNDS FOR REMOVAL

Under 28 U.S.C. § 1441(a), a defendant may remove an action to federal court if the district court has original jurisdiction. Hunter v. Phillip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting Ansley v. Ameriquest Mortg. Co., 340 F.3d 858, 861 (9th Cir. 2003)).

Pursuant to 28 U.S.C. § 1446(b), Defendant files this notice of removal timely, within 30 days after the receipt by the defendant a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

As required by 28 U.S.C. § 1446(a) and local Rules, copies of all process, pleadings, and orders and other papers or exhibits filed in the State Court lacks jurisdiction pursuant to matters with the following issues:

28 U.S.C. § 1331 (Federal Question)

Incorporated by reference is Plaints Complaint, which invokes this courts jurisdiction on the face of the record as follows:

¶ 14. Federal law allegations

a.     ¶ 14 of Plaintiff's complaint states in pertinent part: "The Secretary of State has even provided to the Board the certification and accreditation information for the machines used in Cochise County during the 2022 general election Ex. B."

b.     Exhibit B attaches a letter from Mark Robbins, Interim Director of the U.S. Election Assistance Commission, along with a Certificate of Accreditation document from the United States Election Assistance Commission.

c.     Also attached by reference is a letter from Susan Parmer State Certification Manager to Kattie Hobbs dated November 5, 2019, expressing "The Secretary of State's Equipment Certification Advisory Committee, appointment by my pursuant to A.R.S 16-442,

met in a public meeting held October 29, 2019 to discuss your application and make final recommendation on certification…"

d.      According to Ariz. Rev. Stat. § 16-442 ("**B.** Machines or devices used at any election for federal, state or county offices may only be certified for use in this state and may only be used in this state if they comply with the help America vote act of 2002 and if those machines or devices have been tested and approved by a laboratory that is accredited pursuant to the help America vote act of 2002.")

28 U.S.C. § 1331 (Federal Question)

In determining the presence or absence of federal jurisdiction in removal cases, the "well-pleaded complaint rule" applies, "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Moreover, "it is well established that the plaintiff is the 'master of her complaint' and can plead to avoid federal jurisdiction." Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998-99 (9th Cir. 2007); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987) (citing Gully v. First Nat'l Bank, 299 U.S. 109 (1936)) ("It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.").

The face of Plaintiff' complaint present a federal question of whether or not the Machines or devices used at any election for federal, state or county offices were certified for use in this state and if so may only be used in this state if they comply with the help America vote act of 2002 and if those machines or devices have been tested and approved by a laboratory that is accredited pursuant to the help America vote act of 2002.  Therefore, Plaintiff's complaint does not avoid federal question jurisdiction.

The Court has historically interpreted the "arising under" language in Article III very expansively.  In, 22 U.S. [9 Wheat] 78 [1824], Chief Justice John Marshall held that a case

Osborn v. U.S. Bank, 22 U.S. 738 (1824) satisfies Article III's "arising under" requirement  ("We think, then, that when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact or of law may be involved in it.") In Applying this rule, the Court held that Congress may constitutionally create federal Court jurisdiction whenever a federal law is a potential ingredient for a case.

CONCLUSION

Under the aforementioned circumstances, raised on the face of Plaintiff's complaint of jurisdiction is placed on the Federal Courts by 28 U.S.C. § 1331 et. seq. by way of federal question raised of whether or not the machines were tested by approved laboratories accredited under the Help America Vote act of 2002, pursuant to Ariz. Rev. Stat. § 16-442. THEREFORE, Federal Court Jurisdiction is well founded.

Respectfully submitted,

Dated: December 1, 2022

_____

Daniel J McCauley III,

Attorney for Defendants

1
2

## <u>CERTIFICATE OF FILING AND SERVICE</u>

3      I, Daniel J McCauley III, am over the age of 18 and not a party to this action.

4  I am a resident of or employed in the county where the electronic service occurred; my

5  business/residence address is:  6638 E Ashler Hills Dr Cave Creek, AZ 85331-6638

6      On the date below, I filed a true and correct copy of the original of the attached

7  documents with the Clerk of the Superior Court in Cochise County. I served the foregoing

8  document(s) to the fax number below described as:

9
**NOTICE OF REMOVAL**

10

11      The following party was served:

12      D. Andrew Gaona, Esq. Attorneys for Plaintiffs
       Fax:  (602) 224-6020

13

14      I declare under penalty of perjury under the laws of the State of Arizona that the foregoing

15  is true and correct.

16
Dated: December 1, 2022

17      _____
       Daniel J McCauley III,

18      Attorney for Defendants

19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STATE COURT ACTION

RCVD COCHISE CNTY BOS
NOV 29 2022 PM2:36
Served in Person – mw
@ 2:11 p.m.

1   D. Andrew Gaona (028414)
    **COPPERSMITH BROCKELMAN PLC**
2   2800 North Central Avenue, Suite 1900
    Phoenix, Arizona 85004
3   T: (602) 381-5486
    agaona@cblawyers.com
4

5   Sambo (Bo) Dul (030313)
    **STATES UNITED DEMOCRACY CENTER**
6   8205 South Priest Drive, #10312
    Tempe, Arizona 85284
7   T:  (480) 253-9651
    bo@statesuniteddemocracy.org
8

9   *Attorneys for Plaintiff*
    *Arizona Secretary of State Katie Hobbs*
10

11                  **ARIZONA SUPERIOR COURT**

12                       **COCHISE COUNTY**

13   KATIE HOBBS, in her official capacity as       ) No. **CV 2022 00553**
     Arizona Secretary of State,                     )
14                                                   )   **SUMMONS**
                    Plaintiff,                       )
15                                                   )
            v.                                       )
16                                                   )
     TOM CROSBY, ANN ENGLISH, PEGGY                  )
17   JUDD, in their official capacities as members   )
     of the Cochise County Board of Supervisors;     )
18   and COCHISE COUNTY, a political                  )
     subdivision of the State of Arizona,            )
19                                                   )
                    Defendants.                      )
20                                                   )
                                                     )
21   ────────────────────────────────────────

22   **THE STATE OF ARIZONA TO:**        **ANN ENGLISH, in her official capacity as a**
                                          **member of the Cochise County Board of**
23                                        **Supervisors**

24          A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are
     served on you with this Summons.
25
            If you do not want a judgment or order taken against you without your input, you must
26   file an Answer or a Response in writing with the court, and pay the filing fee.  If you do not

1143968.1

1  file an Answer or Response, the other party may be given the relief requested in his/her
2  Petition or Complaint.  To file your Answer or Response take, or send, the Answer to the Clerk
   of the Superior Court.

3       **Mail a copy of your Response or Answer to the other party at the address listed on**
4  **the top of this Summons.**

5       If this Summons and the other court papers were served on you by a registered process
6  server or the Sheriff, within the State of Arizona, your "*Response*" or "*Answer*" must be filed
   within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the
7  day you were served.  If this Summons and the other papers were served on you by a registered
   process server or the Sheriff outside the State of Arizona, your Response must be filed within
8  THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you
9  were served.  Service by a registered process server or the Sheriff is complete when made.
   Service by Publication is complete thirty (30) days after the date of the first publication.

10      You can get a copy of the court papers filed in this case from the Plaintiff at the address
11 at the top of this Summons, or from the Clerk of the Superior Court.

12      Requests for reasonable accommodation for persons with disabilities must be made to
   the office of the judge or commissioner assigned to the case, at least ten (10) judicial days
13 before your scheduled court date.

14      Requests for an interpreter for persons with limited English proficiency must be made to
15 the office of the judge or commissioner assigned to the case at least ten (10) judicial days in
   advance of your scheduled court date.

16      **SIGNED AND SEALED THIS DATE:** \1-28-2027
17

18                          AMY HUNLEY
                            Clerk of Court
19
20                          By_____
                            Deputy Clerk
21
22
23
24
25
26

- 2 -

RCVD COCHISE CNTY BOS
NOV 29·2022 PM2:36

FILED

2022 NOV 28  PM 4: 19

CL___ ____Y
C___.___ ___. __.__ ___RT
B___. _____

1   D. Andrew Gaona (028414)
    **COPPERSMITH BROCKELMAN PLC**
2   2800 North Central Avenue, Suite 1900
    Phoenix, Arizona 85004
3   T: (602) 381-5486
    agaona@cblawyers.com
4

5   Sambo (Bo) Dul (030313)
    **STATES UNITED DEMOCRACY CENTER**
6   8205 South Priest Drive, #10312
    Tempe, Arizona 85284
7   T:  (480) 253-9651
    bo@statesuniteddemocracy.org
8

9   *Attorneys for Plaintiff*
    *Arizona Secretary of State Katie Hobbs*

10                    **ARIZONA SUPERIOR COURT**

11                      **COCHISE COUNTY**

12  KATIE HOBBS, in her official capacity as      ) No. **CV 2022 0 0 5 5 3**
13  Arizona Secretary of State,                   )
                                                  )
14                      Plaintiff,                ) **VERIFIED COMPLAINT FOR**
                                                  ) **SPECIAL ACTION RELIEF**
15          v.                                    )
                                                  )
16                                                )
    TOM CROSBY, ANN ENGLISH, PEGGY                )
17  JUDD, in their official capacities as members )
    of the Cochise County Board of Supervisors;   )
18  and COCHISE COUNTY, a political               )
    subdivision of the State of Arizona,          )
19                                                )
                                                  )
20                      Defendants.               )
                                                  )
21  _____)

22

23

24

25

26

1142382.5

**Introduction**

1.      The Cochise County Board of Supervisors ("Board") has, without justification, failed to fulfill its mandatory duty to meet and approve its canvass of the results of the 2022 General Election by the statutory deadline of November 28, 2022.

2.      Arizona law provides, with a limited exception inapplicable here, that the Board "shall meet and canvass the election not less than six days nor more than twenty days following the election." A.R.S. § 16-642(A) (emphasis added). The statute's plain language makes clear that this duty is not discretionary. The Board was thus required to meet and canvass the election by November 28th – but the Board has failed to take this required action.

3.      Not only does the Board's inaction violate the applicable statute, but it will potentially disenfranchise the voters of Cochise County. Arizona law requires Secretary of State Katie Hobbs ("Secretary") to "canvass all offices" by the fourth Monday following the general election – here, December 5, 2022. *See* A.R.S. § 16-648; *see also* Ariz. Const. art. V, § 10. And while postponement of the canvass is permitted if the official canvass of any county has not been received by that deadline, this postponement is limited to no more than "thirty days from the date of the election." *See* A.R.S. § 16-648(C). Thus, the very last day for the Secretary to complete the statewide canvass is December 8, 2022 – only three days after the Secretary's original deadline (and 10 days from today).

4.      Absent this Court's intervention, the Secretary will have no choice but to complete the statewide canvass by December 8 without Cochise County's votes included. Thus, the Board's inaction not only violates the plain language of the statute, but also undermines a basic tenet of free and fair elections in this state: ensuring that every Arizonan's voice is heard.

5.      The Board's unprecedented inaction should not disenfranchise tens of thousands of voters in Cochise County.  The Secretary thus brings this action to ensure that those voters' voices are heard and their votes counted.

- 1 -

6.      Special action relief is appropriate when an officer "has failed to . . . to perform a duty required by law as to which he has no discretion." Ariz. R. P. Spec. Act. 3(a). A special action complaint is proper "when a party is raising the question of whether a defendant is failing to perform a duty required by law." *Arizona Bd. of Regents v. State ex rel. State of Ariz. Pub. Safety Ret. Fund Manager Adm'r,* 160 Ariz. 150, 155 (App. 1989). As discussed below, that is exactly the case here.

7.      Special action relief is also appropriate because the Board – without statutory authority, and based on demonstrably false allegations about the testing, certification, and accreditation of electronic voting equipment – has failed to certify the results of the election as tabulated and audited by the county elections director in accordance with statute and election procedures. Ariz. R. P. Spec. 3(b) (special action relief permissible when a defendant "has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority[.]").

8.      This Court should grant the Secretary special action relief (through a writ of mandamus) compelling the Board to meet and canvass the election by December 1, 2022 to allow the Secretary sufficient time to meet the final December 8 deadline for completing the statewide canvass. Otherwise, the Board's failure to perform its non-discretionary duty will impede the timely and accurate canvass of results, undermine the will of Cochise County voters, and sow further confusion and doubt about the integrity of Arizona's election system.

### Parties, Jurisdiction, and Venue

9.      Plaintiff Katie Hobbs is the Arizona Secretary of State and brings this action in her official capacity. As the State's Chief Elections Officer, the Secretary has an important interest in ensuring that all counties timely and lawfully perform their election-related duties, which, here, directly impacts her ability to timely and lawfully conduct the statewide canvass. She also has an interest in ensuring "the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for . . . counting, tabulating and storing ballots." A.R.S. § 16-452(A).

- 2 -

10.     Defendant Tom Crosby is a member of the Cochise County Board of Supervisors and is named in his official capacity. Supervisor Crosby is a public officer subject to a writ of mandamus under the common law, the Rules of Procedure for Special Actions, and A.R.S. §§ 12-2021 *et seq.*

11.     Defendant Ann English is a member of the Cochise County Board of Supervisors and is named in her official capacity. Supervisor English is a public officer subject to a writ of mandamus under the common law, the Rules of Procedure for Special Actions, and A.R.S. §§ 12-2021 *et seq.*

12.     Defendant Peggy Judd is a member of the Cochise County Board of Supervisors and is named in her official capacity. Supervisor Judd is a public officer subject to a writ of mandamus under the common law, the Rules of Procedure for Special Actions, and A.R.S. §§ 12-2021 *et seq.*

13.     Defendant Cochise County is a political subdivision of the State of Arizona and is a public body subject to a writ of mandamus under the common law, the Rules of Procedure for Special Actions, and A.R.S. §§ 12-2021 *et seq.*

14.     Jurisdiction over this action is proper pursuant to A.R.S. §§ 12-2021 and 12-123, as well as Rule 4(a) of the Arizona Rules of Procedure for Special Actions.

15.     Venue in this Court is proper pursuant to A.R.S. § 12-401 and Rule 4(b) of the Arizona Rules of Procedure for Special Actions.

16.     Because this is a statutory special action and a show cause procedure is being used, "the court shall set a speedy return date" on Plaintiff's Application for Order to Show Cause filed herewith. Ariz. R.P.S.A. 4(c); *see also* Ariz. R. Civ. P. 7.3(a) (authorizing a superior court judge to "issue an order requiring a party to show cause why the party applying for the order should not have the relief therein requested").

- 3 -

1

### Factual Background

2

**I.    Arizona Law Imposes Strict Statutory Duties on County Boards of Supervisors**
3          **Regarding the Election Canvass.**

4          17.    After the polls close on Election Day, county boards of supervisors and the "officer

5    in charge of elections" in each county have certain statutory responsibilities, including

6    tabulation, A.R.S. § 16-621, and a limited hand-count audit, A.R.S. § 16-602(B).  After that

7    process is complete, the governing body holding the election must meet and canvass the election

8    by a statutorily prescribed deadline. *See, e.g.*, 2019 Elections Procedures Manual ("2019 EPM")

9    at 240 ("The Board of Supervisors has a non-discretionary duty to canvass the returns as

10   provided by the County Recorder or other officer in charge of elections and has no authority to

11   change vote totals or reject the election results.").[1] Once the Secretary receives the canvasses of

12   all fifteen counties in Arizona, she conducts the statewide canvass. *See* A.R.S. § 16-648(C).

13         18.    Arizona law sets forth strict procedures for how the county- and state-level election

14   canvasses must be conducted. At the county level, the governing body holding the election – in

15   this case, the Board – "<u>shall</u> meet and canvass the election not less than six days nor more than

16   twenty days following the election" (here, November 28, 2022).  *See* A.R.S. § 16-642(A)

17   (emphasis added). The <u>only</u> exception to this rule is if returns from any polling place or vote

18   center are found to be missing, in which case the canvass must be postponed day by day until all

19   returns are received or six postponements have been had. *Id.* § 16-642(C).

20         19.    Once completed, the Board must transmit the canvass to the Secretary, A.R.S. §

21   16-646(B)-(C), who must then complete the statewide canvass by the fourth Monday following

22   the general election (here, December 5, 2022). *See* A.R.S. § 16-648(A). In other words, while

23   the counties have a significant period of time to complete their canvass, the Secretary has only

24

25   _____

26   [1] https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPRO
     VED.pdf.

                                              - 4 -

one week to compel their performance <u>and</u> complete her own statewide canvass by the statutory deadline if the counties fail to fulfill their statutory responsibilities.

20.     Arizona law allows for postponement of the statewide canvass only if the official canvass of any county has not been received by the foregoing deadline. But this postponement is limited to no more than "thirty days from the date of the election" (here, December 8, 2022). *See* A.R.S. § 16-648(C).

21.     In sum, the Board was required to meet and approve its canvass on or before November 28, 2022. *See* A.R.S. § 16-642(A). Compliance with this deadline enables the Secretary to conduct the statewide canvass by December 5, 2022. *See* A.R.S. § 16-648(A). And that December 5 deadline can be postponed – if appropriate – to no later than December 8, 2022, at which point the Secretary is required by law to conduct the canvass and "promptly" certify the election. *See* A.R.S. §§ 16-648(C), 16-650; *see also* 2019 EPM at 248.

22.     Complying with these statutory deadlines is of particular importance this year because two statewide races (Attorney General and Superintendent of Public Instruction) and one legislative race (House of Representatives, Legislative District 13) will require mandatory automatic recounts under A.R.S. § 16-661. The Secretary cannot certify the facts necessary to obtain a court order to begin those recounts until after the statewide canvass is completed. *See* A.R.S. § 16-662 ("<u>When the canvass shows that a recount is required</u>, the secretary of state shall, in the case of an office to be filled by electors of the entire state, a congressional district, a legislative district or a subdivision of the state greater than a county, initiated or referred measures or proposals to amend the constitution, certify the facts requiring the recount to the superior court in Maricopa county.") (emphasis added).

23.     The recount process will take time and must be completed expeditiously because the terms of executive officers and the legislature begin "on the first Monday of January" (*i.e.*, January 3, 2023). *See* Ariz. Const. art. 5 § 1 ("The executive department shall consist of the governor, secretary of state, state treasurer, attorney general, and superintendent of public

instruction, each of whom shall hold office for four years beginning on the first Monday of January"); Ariz. Const. art. IV, pt. 2, § 22 (legislators' terms begin on the "first Monday in January"). A delay of even a few days in these critical processes could affect the continuity of state government and interfere with the will of the people.

## II.    The Cochise County Board of Supervisors Fails to Perform Its Duty to Timely Canvass the Election Results.

### A.    The Board Delays the Canvass Until the Eleventh Hour.

24.    The Board held a special meeting on the evening of November 18, 2022, where it heard statements from various conspiracy theorists – known for filing spurious lawsuits before the Arizona courts – who claimed that the vote tabulation equipment used in Cochise County was improperly certified under state and federal law.[2]

25.    At the November 18 meeting, both Cochise County Elections Director Lisa Marra and State Elections Director Kori Lorick emphasized that claims of improper certification were baseless. Ms. Marra stated that the election "was conducted within the legal requirements of all

---

[2] *See* Bob Christie, *Cochise County Board Delays Certifying Election Results*, ASSOCIATED PRESS, Nov. 19, 2022, https://apnews.com/article/arizona-election-recounts-48a744c9972da2df954afcdd73c42bde (last visited Nov. 20, 2022). The conspiracy theorists – Daniel Wood, Brian Steiner, and Paul Rice – are known for filing multiple lawsuits challenging the 2020 election results. In September 2022, the Arizona Supreme Court issued a minute entry denying their request to compel the Attorney General, Governor, Secretary, and Chief Justice to decertify and rerun the Arizona 2020 presidential election based on purportedly improperly certified voting equipment. Noting the "strong public policy favoring stability and finality of election results," the Supreme Court denied the challenge as untimely and observed that the petitioners lacked legal authority for their requested relief. A true and correct copy of the minute entry is attached as **Exhibit G**. Relatedly, Wood was a designated spokesman for the group "We the People of the State of Arizona," which filed a special action petition claiming that the 2018 and 2020 general elections were invalid because the voting machines did not follow federal certification requirements. The lawsuit requested that the Court remove the current "usurpers" holding public office – including the Secretary and Governor Doug Ducey – and allow petitioners to sit in their stead. The Arizona Supreme Court dismissed the petition in May 2021, finding "no legal basis for the relief requested." *See People ex rel. B.J.B. v. Ducey*, No. CV-21-0114-SA, 2021 WL 1997667, at *2 (Ariz. May 11, 2021) (memorandum decision).

state and federal laws, and the results should be certified by the Board of Supervisors." *See* Cochise Cnty. Bd. Of Supervisors, Special Meeting General Election Canvass, Nov. 18, 2022, https://www.youtube.com/watch?v=RvAxd054xoM (12:58-13:07 mark). And Ms. Lorick noted that the voting machines had been "properly certified under both federal and state laws and requirements," and that "claims that the SLI testing labs were not properly accredited [are] false." *See id.* (1:57:05-57:48 mark).

26.     Nonetheless, Board members Crosby and Judd voted to delay the canvass until 10 a.m. on November 28 – the last day possible under Arizona law – purportedly so that someone with the requisite "expertise" could prove to them that the machines were properly certified by an accredited laboratory. *See id.* (2:11:45-2:15:55 mark). The Board also asked Ms. Lorick to provide more information attesting to the voting machines' accuracy and reliability, which she agreed to do. *See id.* (2:16:50-2:18:35 mark).

**B.      The Secretary Warns the Board, to No Avail, that it Must Canvass the Election by the Deadline or Face a Potential Special Action.**

27.     On November 21, 2022, the Secretary sent a letter to the Board warning that any failure to canvass the election by the November 28, 2022 deadline violated Arizona law, re-affirming Ms. Lorick's comments from the November 18 Board meeting, and attaching (among other things) a letter from the Elections Assistance Commission ("EAC") confirming that Cochise County's vote tabulation machines are properly certified and accredited. A true and correct copy of the Secretary's letter is attached as **Exhibit A** (Nov. 21, 2022 Letter from K. Lorick). A true and correct copy of EAC's letter is attached as **Exhibit B** (Nov. 21, 2022 Letter from M. Robbins). The Secretary warned that the Board's failure to certify the canvass by November 28 would lead to legal action, including special action relief. *See* Ex. A at 2.

28.     But the Board ignored the Secretary's warning. On November 28, it met again and refused to certify the canvass by the statutory deadline. In the end, the Board voted 2-1, with Supervisors Crosby and Judd voting in the affirmative, to keep the agenda item related to the

certification of the canvass "on the table" until December 2, and that the item would only be removed from the table and voted on after the Board hears from a group of individuals opposing certification and representatives of the Secretary.

### III.   The Board's Failure to Timely Meet and Canvass the Election Violates Arizona Law.

**A.     The Board's Duty to Timely Canvass the Election Results is Mandatory.**

29.     The Arizona Constitution provides that "[t]he returns of the election for all state officers shall be canvassed, and certificates of election issued by the secretary of state, in such manner as may be provided by law." Ariz. Const. art. V, § 10.

30.     Arizona law, in turn, provides that the governing body conducting an election – in this case, the Board – "<u>shall</u> meet and canvass the election not less than six days nor more than twenty days following the election." A.R.S. § 16-642(A) (emphasis added). Indeed, the governing statutory provisions prescribing the Board's canvassing duties consistently use the words "shall" in specifying when and how the Board is to conduct the canvass. *See, e.g.*, A.R.S. §§ 16-642, 16-644, 16-645, 16-646.

31.     It is well settled that "[t]he use of the word 'shall' indicates a mandatory intent by the legislature." *Ins. Co. of N. Am. v. Superior Ct. In & For Cty. of Santa Cruz*, 166 Ariz. 82, 85 (1990); *see also HCZ Const., Inc. v. First Franklin Fin. Corp.*, 199 Ariz. 361, 364 ¶¶ 10-11 (App. 2001) ("Words are given their ordinary meaning unless the context of the statute requires otherwise . . . [t]he ordinary meaning of 'shall' in a statute is to impose a mandatory provision.") (citations omitted).

32.     There is a single, narrow exception to this general rule: The word "shall" may be considered directory "when the legislative purpose can best be carried out by such construction." *Id.* But that is not the case here.[3] On the contrary, the legislative history of A.R.S. §§ 16-642 –

---

[3] In the most frequently cited example of an Arizona court giving a permissive construction to the word "shall," the court was acting to save the constitutionality of the statute in which the

and related statutory provisions setting forth the Board's canvassing duties – makes clear that the term "shall" imposes a mandatory duty on the Board. *See, e.g.*, SB 1037 Final Amended Fact Sheet, May 1, 2006 (last accessed Nov. 18, 2022) ("Arizona law contains a general canvass of elections statute that requires the governing body holding an election to canvass the election [by the statutorily prescribed deadline]" and "specifically requires the Board of Supervisors to deliver the canvass of precinct returns to the Secretary of State" by the deadline) (emphasis added)[4]; SB 1492 Senate Fact Sheet, Apr. 9, 2021 (last accessed Nov. 21, 2022) (summarizing amendment to A.R.S. § 16-645 stating that the Board "must deliver the canvass to the Secretary of State . . . within 14 days after the primary election")[5]; HB 2604 Amended Senate Fact Sheet, Apr. 12, 2018 (last accessed Nov. 18, 2022) (amending A.R.S. § 16-646 by "[r]equir[ing]" that certain information be included in the official canvass pursuant to a House bill aimed at increasing voter participation in elections).[6]

33.     There is simply no meritorious argument that the statute's use of the word "shall" should be deemed as anything other than mandatory.

**B.     The Limited Exception in A.R.S. § 16-642 is Inapplicable Here.**

34.     There is a single, limited exception to the mandate prescribed in A.R.S. § 16-642(A): the Board may postpone the canvass "from day to day until all the returns are received or until six postponements have been had" if "at the time of the meeting of the governing body, the returns from any polling place in the election district where the polls were opened and an election held are found to be missing[.]" A.R.S. § 16-642(C).

---

word appeared. *See Arizona Downs v. Arizona Horsemen's Found.*, 130 Ariz. 550, 555 1058 (1981) ("[W]e believe that a reasonable and constitutional construction of the challenged provision is that the word "shall" is used in a directory sense rather than in a mandatory sense").

[4] https://www.azleg.gov/legtext/47leg/2r/summary/s.1037jud_asenacted.doc.htm.

[5] https://www.azleg.gov/legtext/55leg/1R/summary/H.SB1492_040821_TRANSMITTED.pdf.

[6] https://www.azleg.gov/legtext/53leg/2R/summary/S.2604GOV_ASPASSEDCONFERENCE COMMITTEE.pdf.

35.     Here, no returns have been "found to be missing." Instead, the Board's sole justification for missing the statutory deadline is that the County's electronic voting equipment failed to satisfy state and/or federal requirements. The Court need not consider the merits of this argument, because concerns about the certification of voting equipment are not a legal basis for failing to conduct the canvass by the statutory deadline. This alone should end the Court's inquiry.

**IV.     The County's Election Equipment is Properly Certified.**

36.     But even on its merits, the Board's frivolous argument fails because Cochise County's election equipment was properly certified for use in the 2022 elections.

**A.     Arizona's Established History of Using Electronic Voting Equipment.**

37.     Arizona counties use electronic equipment to tabulate votes, and they have done so for many decades. Arizona first authorized the use of electronic voting systems as early as 1966. H.B. 204, 27th Leg., 2d. Reg. Sess. (Ariz. 1966). All electronic voting systems undergo federal and state testing and certification before being used in Arizona elections, counties perform logic and accuracy testing on all equipment before and after every election, and the Secretary separately performs logic and accuracy testing on a sample of each county's equipment before each election with a federal, statewide, or legislative race. *See, e.g.*, A.R.S. §§ 16-442, 16-449, 16-602; 2019 EPM at 76-82, 86-100, 235.

38.     Though Arizona uses electronic equipment to tabulate votes, every vote cast in Arizona is on a paper ballot. *E.g.*, A.R.S. §§ 16-462, 16-468(2), 16-502. The Secretary has certified each electronic voting system to be used in each county in the 2022 elections, including in Cochise County. *See* Ariz. Sec'y of State, *2022 Election Cycle / Voting Equipment*, https://azsos.gov/sites/default/files/2022_Election_Cycle_Voting_Equipment_Aug.pdf.

39.     Under A.R.S. § 16-442(B), electronic voting equipment must comply with the Help America Vote Act of 2002 ("HAVA") and be approved by an accredited laboratory, known as a voting system testing laboratory ("VSTL"). *See also* 2019 EPM Ch. 4 § I. There are two

VSTLs accredited by the U.S. Election Assistance Commission ("EAC"): (1) Pro V&V and (2) SLI Compliance, a Division of Gaming Laboratories International, LLC ("SLI"). HAVA also establishes standards for electronic voting equipment under 52 U.S.C. § 21081, and the EAC has promulgated voluntary guidelines for voting systems under 52 U.S.C. § 21101. *See* 2005 Voluntary Voting System Guidelines ("VVSG").[7]

40.     Cochise County used the ES&S, EVS 6.0.4.0 voting system for its 2022 elections.[8] This voting system was tested and certified under the VVSG in 2019. U.S. Election Assistance Comm'n, ES&S EVS 6.0.4.0, https://www.eac.gov/voting-equipment/evs-6040; *see also* Ex. B.

**B.     SLI's Accreditation Was Not Revoked.**

41.     The basis for the Board's delay – that Cochise County's voting machines may not have been properly certified because SLI, the VSTL that tested the system, was not properly accredited – lacks any factual basis. Instead, the fact that SLI was properly accredited during the entirety of the relevant time period is apparent from the face of SLI's certificate of accreditation.

42.     On January 10, 2018, the EAC issued SLI a certificate of accreditation effective until January 10, 2021. A true and correct copy of the SLI Certificate of Accreditation is attached as **Exhibit C**.

43.     The certification application for ES&S's EVS 6.0.4.0, the voting system used in Cochise County, was approved for testing on October 15, 2018 and the Application Approval Letter designated SLI Compliance as the lead VSTL for testing the system. A true and correct copy of the Application Approval Letter is attached as **Exhibit D**.

44.     On May 3, 2019, EAC certified the ES&S's EVS 6.0.4.0 voting system. A true and correct copy of the Certificate of Conformance is attached as **Exhibit E**.

---

[7] https://www.eac.gov/voting-equipment/voluntary-voting-system-guidelines.

[8] https://www.eac.gov/voting-equipment/system-certification-process.

45.     During the entirety of the relevant time period – from application approval of ES&S's EVS 6.0.4.0 and designation of SLI as the lead testing laboratory on October 15, 2018 (Ex. D), throughout SLI's testing of the voting system, and to the EAC's certification of the system on May 3, 2019 (Ex. E) – SLI maintained its accreditation, as clearly evidenced by the dates on its Certificate of Accreditation (Ex. C).[9]

46.     The false and inaccurate allegations that SLI's accreditation lapsed or expired – and therefore its testing and the certification of EVS 6.0.4.0 is somehow "void" – likely stemmed from the fact that, due to an administrative error, after the January 10, 2021 expiration date on SLI's Certificate of Accreditation, the EAC did not produce an updated Certificate of Accreditation until February 1, 2021. *See* SLI Certificate of Accreditation, Feb. 1, 2021.[10] Even if this slight delay in producing an updated certificate had any legal significance (as explained below, it does not), testing and certification of EVS 6.0.4.0 was completed in May 2019, almost two years before the January 10, 2021 expiration date.

47.     And even if any part of SLI's testing of EVS 6.0.4.0 occurred between January 10, 2021 and February 1, 2021, that fact would not have "voided" the testing and certification of the voting system because SLI's accreditation was never revoked and never expired. The EAC has directly addressed this allegation, clarifying that SLI "remained in good standing with the requirements of [the EAC's] program and retained their accreditation," that the "lack of generating a new certificate does not indicate that [SLI was] out of compliance," and that "[a]ll certifications during this period remain valid as does the lab accreditation." *See* EAC, *VSTL*

---

[9] As stated in the Secretary's November 21, 2022 letter, ES&S's EVS 6.0.4.0 was also reviewed and tested by Arizona's Equipment Certification and Advisory Committee. *See* Ex. A at 1. It was conditionally certified by the state on November 5, 2019 and finally certified on February 24, 2020. A true and correct copy of the February 2020 certification is attached as **Exhibit F**.

[10] https://www.eac.gov/sites/default/files/voting_system_test_lab/files/SLI%20Certificate%20o f%20Accreditation%202021.pdf.

- 12 -

*Certificates and Accreditation*, July 22, 2021; [11] *see also* EAC Memorandum, *SLI Compliance EAC VSTL Accreditation*, Jan. 27, 2021 ("Due to the outstanding circumstances posed by COVID-19, the renewal process for EAC laboratories has been delayed for an extended period. While this process continues, SLI retains its EAC VSTL accreditation.").[12]

48.     And even more to the point, under HAVA, EAC accreditation of a VSTL cannot be revoked unless the EAC Commissioners vote to revoke the accreditation. 52 U.S.C. § 20971(c)(2) ("The accreditation of a laboratory for purposes of this section may not be revoked unless the revocation is approved by a vote of the Commission."). The Commission accredited SLI on February 28, 2007, and, since then, the Commission has not revoked SLI's accreditation. Nothing in federal or state law says a VSTL loses its accreditation if the EAC does not formally issue a new "certificate" every two years.

49.     In sum, there was a valid certificate of accreditation for SLI throughout the testing and certification process for EVS 6.0.4.0, the voting system used in Cochise County. And even if the slight gap in the dates on SLI's certificates of accreditation covered any relevant time period, nothing in federal or state law invalidated SLI's EAC VSTL accreditation here. Arizona law requires that electronic voting systems comply with HAVA and be approved by an accredited VSTL. Cochise County's ES&S voting equipment complies with those requirements.

### Claims for Relief

### Count I: Special Action (Mandamus)

50.     The Secretary incorporates all preceding paragraphs as if fully set forth herein.

---

[11] https://www.eac.gov/sites/default/files/voting_system_test_lab/files/VSTL%20Certificates%20and%20Accreditation_0.pdf.

[12] https://www.eac.gov/sites/default/files/voting_system_test_lab/files/SLI_Compliance_Accreditation_Renewal_delay_memo012721.pdf.

- 13 -

51.     Special action relief is appropriate when an officer "has failed . . . to perform a duty required by law as to which he has no discretion," or "has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority." Ariz. R.P.S.A. 3(a), (b).

52.     The special action procedures are "the modern equivalent of common law writs" of certiorari, mandamus, or prohibition. *Fairness & Accountability in Ins. Reform v. Greene*, 180 Ariz. 582, 584 n.1 (1994) (citing Ariz. R.P.S.A. 1(a)).

53.     At common law, Arizona courts granted writs of mandamus "to compel an officer to perform a duty concerning which he has no discretion, and which he has refused to perform." *Bd. of Regents of Univ. & State Colleges v. Frohmiller*, 69 Ariz. 50, 54–55 (1949).

54.     As detailed above, Defendants had a mandatory duty to meet and canvass the election by November 28, 2022, but refused to do so. This violates A.R.S. § 16-642(A), which provides that Defendants shall meet to canvass the election by "not less than six days nor more than twenty days following the election." (emphasis added).

55.     There is a single, limited exception to the foregoing mandate: if "the returns from any polling place in the election district where the polls were opened and an election held are found to be missing[.]" *Id.* § 16-642(C). As discussed above, Defendants' purported basis for failing to perform their mandatory statutory duty – the (incorrect) claim that the electronic voting equipment used in Cochise County was improperly certified – does not fall within this limited exception. Defendants thus had no basis under the law to refuse to abide by A.R.S. § 16-642(A).

56.     Simply stated, Defendants have failed to perform a duty which they have no discretion to refuse to perform.

57.     Because the statute gives the Board no discretion, the Board's mandate is a purely ministerial task within the scope of a traditional writ of mandamus. *See Ponderosa Fire Dist. v. Coconino Cty.*, 235 Ariz. 597, 601–02 ¶ 19 (App. 2014) ("A mandamus action may only be brought if the statutory duty imposed on the public official or board is purely "ministerial." []A

- 14 -

ministerial duty is one that specifically describes the manner of performance and "leaves nothing to the discretion" of the public official or board.") (citations omitted).

58.    The Secretary has no other equally plain, speedy, and adequate remedy at law.

59.    The Secretary is entitled to special action relief compelling Defendants and their agents to meet and canvass the 2022 election by no later than December 1, 2022, so that the Secretary is not forced to conduct the statewide canvass and certify the election without including the votes from Cochise County.

**Count II: Declaratory Judgment**

60.    The Secretary incorporates the preceding paragraphs as if fully set forth herein.

61.    As detailed above, Defendants have no discretion to refuse to perform the duty required of them by statute – to meet and canvass the election by November 28, 2022. *See* A.R.S. § 16-642(A).

62.    An actual and justiciable controversy exists regarding the Board's failure to act within the prescribed deadline, including because, on information and belief, the Board has no intention of canvassing the election before the Secretary's December 8, 2022 final deadline to conduct the statewide canvass. Not only is this unlawful, but delaying the canvass from December 5 may create serious administrative hurdles. Statute requires that the Secretary canvass the statewide election in the presence of the governor, the attorney general, and the chief justice of the supreme court. A.R.S. § 16-648(A)-(B). While all three individuals are available on December 5, they have not confirmed whether they will be able to attend a later date. Additionally, three state level contests from the 2022 General Election fall within the margin for an automatic recount, which cannot be initiated until the official statewide canvass is complete. A.R.S. § 16-661(A). Any delay in canvassing will delay the recount process and, subsequently, final results and issuance of certificates of election for these recounted contests.

- 15 -

63.     The Secretary requests a declaration that: (i) the Board violated Arizona law by failing to meet and canvass the election by the statutory deadline of November 28, 2022 and (ii) the Board had no discretion not to meet and canvass the election by the statutory deadline.

### Count III: Injunctive Relief

64.     The Secretary incorporates all preceding paragraphs as if fully set forth herein.

65.     As detailed above, Defendants violated Arizona law by failing to meet and canvass the election by November 28, 2022. *See* A.R.S. § 16-642(A).

66.     Absent the entry of an injunction compelling Defendants and their agents to meet and canvass the countywide election by December 1, 2022, the Secretary will have no choice but to proceed with certifying the statewide canvass without the votes from Cochise County. This will cause irreparable harm to the Secretary, the people of Arizona, and, particularly, the voters of Cochise County. The law requires the Secretary to conduct the statewide canvass no later than December 8, 2022. But by following the law – as she must – the Secretary will be forced to discount a key segment of Arizona voters, undermining her commitment to ensuring that every Arizonan's voice is heard in this election. In the current climate, this will instill further confusion and doubt into our election system.

67.     The balance of hardships and public interest both favor the Secretary. *Arizona Pub. Integrity All. v. Fontes*, 250 Ariz. 58, 64, 475 P.3d 303, 309, ¶¶ 27-28 (2020) (plaintiffs satisfied injunctive relief standard in mandamus action seeking to compel county recorder to perform his legal duty).

### Prayer for Relief

WHEREFORE the Secretary respectfully requests that this Court order the following relief on an expedited basis:

A.     Grant the Secretary's request for special action relief in the form of an order compelling Defendants and their agents to meet and canvass the countywide election by

- 16 -

December 1, 2022 to allow the Secretary sufficient time to meet the final December 8 deadline for completing the statewide canvass;

B.     Alternatively, grant the Secretary's request for a declaratory judgment and injunction declaring the Board's actions to be unlawful and compelling Defendants and their agents to meet and canvass the countywide election by December 1, 2022;

C.     Enter an order directing Defendants to pay the Secretary's reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341, 12-348.01, 12-2030, Rule 4(g) of the Arizona Rules of Procedure for Special Actions, or any other applicable provision of law or equitable principle; and

D.     Grant the Secretary such other and further relief as the Court deems just and proper.

Respectfully submitted this 28th day of November, 2022.

**COPPERSMITH BROCKELMAN PLC**

By _____
     D. Andrew Gaona

**STATES UNITED DEMOCRACY CENTER**
Sambo (Bo) Dul

*Attorneys for Plaintiff Arizona Secretary of State Katie Hobbs*

- 17 -

**VERIFICATION**

I, Kori Lorick, do state and swear under penalty of perjury and as permitted by Rule 80(c), Ariz. R. Civ. P., as follows:

I am the State Elections Director in Arizona Secretary of State Katie Hobbs' office. I have read the foregoing Verified Complaint for Special Action Relief and, to the best of my knowledge, information and belief, the statements made therein are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of November, 2022.

*Kori Lorick*

_____

Kori Lorick
Arizona State Elections Director

Exhibit A

# Exhibit A



**KATIE HOBBS**
SECRETARY OF STATE

November 21, 2022

*Via Email*

Cochise County Board of Supervisors
Tom Crosby, tcrosby@cochise.az.gov
Ann English, aenglish@cochise.az.gov
Peggy Judd, pjudd@cochise.az.gov

### Re: 2022 General Election Canvass

Dear Cochise County Board of Supervisors,

The Board of Supervisors has a non-discretionary duty under Arizona law to canvass the County's 2022 General Election and transmit the canvass to the Secretary of State by November 28, 2022. If you fail to do so, the Secretary will use all available legal remedies to compel compliance with Arizona law and protect Cochise County voters' right to have their votes counted.

At your public meeting on November 18, 2022, you voted to delay certification of the County's 2022 General Election canvass and requested more information about false claims concerning the County's election equipment. These claims are derived from baseless conspiracies about Arizona's equipment certification process. Cochise County's election equipment was properly certified and remains in compliance with state and federal requirements. Cochise County uses Election Systems & Software (ES&S) Voting System (EVS) version 6.0.4.0 (ESSEVS6040), which was certified by the U.S. Election Assistance Commission (EAC) on May 3, 2019. SLI Compliance, the federal lab that conducted the testing for ESSEVS6040, was an accredited lab at all times during the testing process. Additionally, pursuant to Arizona's certification requirements, the ESSEVS6040 was reviewed and tested by the state's Equipment Certification Advisory Committee then certified by the state on November 5, 2019. Please see the attachments that support these facts.

We also requested that the EAC, the federal agency that accredits the voting system testing laboratories, provide confirmation specifically in response to the concerns raised at the Board's meeting. The EAC unequivocally confirmed in the attached letter that SLI Compliance, the lab that tested the election equipment that Cochise uses, was properly accredited throughout the certification process.

1

A.R.S. § 16-642 requires each county board of supervisors to meet and canvass the election no later than 20 days after the election. For the November 8, 2022 General Election, boards of supervisors therefore must canvass no later than November 28. The board of supervisors then must transmit the certified canvass to the Secretary, who is required to conduct the statewide canvass on December 5, 2022. A.R.S. § 16-648(A). These strict statutory deadlines make clear that the duty to canvass is not discretionary. In fact, the 2019 Elections Procedures Manual ("EPM") explicitly provides that the Board "has a non-discretionary duty to canvass the returns as provided by the County Recorder or other officer in charge of elections and has no authority to change vote totals or reject the election results." 2019 EPM at 240. Because the Board has no authority to change or reject the results, the canvass is a purely ministerial act.

Bad faith attempts to derail Arizona's democracy will not go unaddressed. If the Board refuses to certify the canvass by November 28, the Secretary will take all available legal action, including filing a special action to compel the Board's compliance.[1] If the Board still has not certified by the state canvass deadline, the state canvass will proceed regardless, as is required under Arizona's law, and your refusal to certify will only serve to disenfranchise Cochise County voters. Please let me know if you need any additional information prior to your November 28 meeting to certify Cochise's election results.

Sincerely,

*Kori Lorick*

Kori Lorick
State Elections Director
Arizona Secretary of State Katie Hobbs
klorick@azsos.gov

cc
Tim Mattix, Clerk of the Board
tmattix@cochise.az.gov

Christine Roberts, Chief Civil County Attorney
croberts@cochise.az.gov

Richard Karwaczka, County Administrator
rkarwaczka@cochise.az.gov

Sharon Gilman, Deputy County Administrator,

---

[1] An official canvass may only be postponed past the statutory deadline if returns from a polling place are missing. A.R.S. § 16-642(C). Because this is not the case for Cochise County's 2022 results, the Board must comply with the 20-day deadline specified in A.R.S. § 16-642(A).

2

Exhibit B

# Exhibit B



**U.S. ELECTION ASSISTANCE COMMISSION**
633 3rd St. NW, Suite 200
Washington, DC 20001

November 21, 2022

Arizona Secretary of State
1700 W Washington St Fl 7
Phoenix AZ 85007

Dear Secretary Hobbs,

The Election Systems & Software (ES&S) Voting System (EVS) version 6.0.4.0 (ESSEVS6040) was certified by the U.S. Election Assistance Commission (EAC) on May 3, 2019.[1] Details and documentation regarding the testing and certification of ESSEVS6040 are publicly available on the EAC's website at https://www.eac.gov/voting-equipment/evs-6040.

ES&S's application for certification of EVS 6.0.4.0 was approved for testing on October 15, 2018. In accordance with the EAC's Testing and Certification Manual,[2] the October 15, 2018, Application Approval Letter[3] designated SLI Compliance, an EAC-accredited voting system testing laboratory (VSTL), as the lead VSTL for this testing engagement.

During the testing of the ESSEVS6040, from application approval on October 15, 2018, to certification on May 3, 2019, SLI Laboratory complied with the EAC's Voting System Testing Laboratory Manual[4] and maintained its accreditation, as shown by the dates on its Certificate of Accreditation.[5]

For additional information on the EAC Testing and Certification Program, please see the How a Voting System Becomes Certified: Overview of the EAC Certification Process document located in the EAC FOIA Reading Room. The Declaration of Mark A. Robbins document located in the EAC FOIA Reading Room also discusses in greater detail the EAC Testing and Certification Program.

Sincerely,

Mark A. Robbins

Mark A. Robbins, Interim Executive Director
U.S. Election Assistance Commission

---

[1] https://www.eac.gov/sites/default/files/voting_system/files/EVS6040_Cert_Scope%28FINAL%29.pdf
[2] https://www.eac.gov/sites/default/files/eac_assets/1/28/Cert%20Manual%207%208%2015%20FINAL.pdf
[3] https://www.eac.gov/sites/default/files/voting_system/files/Application.Approval.Letter3.pdf
[4] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf
[5]https://www.eac.gov/sites/default/files/voting_system_test_lab/files/SLI_Compliance_Certificate_of_Accreditation
011018.pdf

Exhibit C

# Exhibit C



**United States Election Assistance Commission**

## Certificate of Accreditation

# SLI Compliance,
# Division of Gaming Laboratories International, LLC
# Wheat Ridge, Colorado

*is recognized by the U.S. Election Assistance Commission for the testing of voting systems to the 2002 Voting Systems Standards, the Voluntary Voting Systems Guidelines versions 1.0 and 1.1 under the criteria set forth in the EAC Voting System Testing and Certification Program and Laboratory Accreditation Program. SLI Compliance is also recognized as having successfully completed assessments by the National Voluntary Laboratory Accreditation Program for conformance to the requirements of ISO/IEC 17025 and the criteria set forth in NIST Handbooks 150 and 150-22.*

*Effective Through*

Date: 1/10/18

January 10, 2021

**Brian Newby,**
***Executive Director, U.S. Election Assistance Commission***

EAC Lab Code: **0701**

Exhibit D

# Exhibit D



**U. S. ELECTION ASSISTANCE COMMISSION**
VOTING SYSTEM TESTING AND CERTIFICATION PROGRAM
1335 East West Highway, Suite 4300
Silver Spring, MD 20910

**SENT VIA EMAIL**

October 15, 2018

Sue McKay
Director of Certification
Election Systems & Software
11208 John Galt Boulevard
Omaha, Nebraska 68137

**Approval of Voting System Testing Application Package**

Dear Sue McKay,

The U.S. Election Assistance Commission (EAC) completed the review of the application package for the Election Systems and Software's (ES&S) EVS 6.0.4.0 voting system. The application was accepted and assigned the following unique application number: EVS6040.

ES&S selected SLI Compliance as the lead VSTL for this testing engagement and testing will be conducted to the *VVSG 1.0.* If the system meets the criteria for a grant of certification, the system will be assigned the number "__ESSEVS6040__," as per your request on the application form (EAC-002C).

The Certification Program assigned Ryan Macias as Project Manager to oversee this testing engagement. The goal of the Project Manager is to facilitate the communication between EAC staff (including Technical Reviewers), manufacturer, and VSTL to optimize the efficiency of the certification process. The Project Manager will monitor the voting system throughout its life cycle in the Certification Program, and ensure the process meets the requirements of the Certification Program's manuals.

The contact information for this Project Manager is:

- Name and Title:  Ryan Macias, Sr. Election Technology Specialist
- E-mail:  rmacias@eac.gov
- Telephone:  (202) 579-5496

The EAC may at any time utilize additional technical reviewers to assist in the review of test plans, test cases, and test reports. All communications with the technical reviewers shall be facilitated through the Project Manager.

Finally, we strongly encourage you to regularly visit the EAC's Web site (www.eac.gov) for the latest Notices of Interpretation and Clarification, news, program manuals, and updates.  The exact location of this information is:  http://www.eac.gov/program-areas/voting-systems. The information contained in the Notices of Interpretation and Clarification is critical to understanding testing standards and program requirements.  It is a manufacturer's responsibility to ensure they adhere to all procedural requirements of the program.

If you have any questions or need further information about this matter, please do not hesitate to contact us at your earliest convenience.  We thank you in advance for your cooperation in this matter.

Sincerely,

Brian Hancock
Director of Voting System Testing and Certification

Exhibit E

# Exhibit E



United States Election Assistance Commission

## Certificate of Conformance



VVSG 2005 VER. 1

# EAC

CERTIFIED

## ES&S EVS 6.0.4.0

The voting system identified on this certificate has been evaluated at an accredited voting system testing laboratory for conformance to the *Voluntary Voting System Guidelines Version 1.0 (VVSG 1.0)* . Components evaluated for this certification are detailed in the attached Scope of Certification document. This certificate applies only to the specific version and release of the product in its evaluated configuration. The evaluation has been verified by the EAC in accordance with the provisions of the EAC *Voting System Testing* and *Certification Program Manual* and the conclusions of the testing laboratory in the test report are consistent with the evidence adduced. This certificate is not an endorsement of the product by any agency of the U.S. Government and no warranty of the product is either expressed or implied.

Product Name:  EVS

Model or Version:   6.0.4.0

Name of VSTL:   SLI Compliance

EAC Certification Number:   **ESSEVS6040**

Date Issued:  May 3, 2019

*Executive Director*

Scope of Certification Attached

**Manufacturer:** *Election Systems & Software*
**System Name:** *EVS 6.0.4.0*
**Certificate:**  *ESSEVS6040*

**Laboratory:** *SLI Compliance*
**Standard:**  *VVSG 1.0 (2005)*
**Date:**  *May 3, 2019*



# Scope of Certification

This document describes the scope of the validation and certification of the system defined above.  Any use, configuration changes, revision changes, additions or subtractions from the described system are not included in this evaluation.

## Significance of EAC Certification

An EAC certification is an official recognition that a voting system (in a specific configuration or configurations) has been tested to and has met an identified set of Federal voting system standards. An EAC certification is **not**:

- An endorsement of a Manufacturer, voting system, or any of the system's components.
- A Federal warranty of the voting system or any of its components.
- A determination that a voting system, when fielded, will be operated in a manner that meets all HAVA requirements.
- A substitute for State or local certification and testing.
- A determination that the system is ready for use in an election.
- A determination that any particular component of a certified system is itself certified for use outside the certified configuration.

## Representation of EAC Certification

Manufacturers may not represent or imply that a voting system is certified unless it has received a Certificate of Conformance for that system. Statements regarding EAC certification in brochures, on Web sites, on displays, and in advertising/sales literature must be made solely in reference to specific systems. Any action by a Manufacturer to suggest EAC endorsement of its product or organization is strictly prohibited and may result in a Manufacturer's suspension or other action pursuant to Federal civil and criminal law.

## System Overview

The ES&S EVS 6.0.4.0 voting system is a modification of the ES&S EVS 6.0.2.0 voting system, certified on October 4, 2018, which contains changes in hardware, software, as well as an upgrade in the election management system's COTS operating system.  The ES&S EVS 6.0.4.0 voting system is composed of software applications, central count location devices and polling place devices with accompanying firmware, and COTS hardware and software.

**Electionware®**
Electionware election management software is an end-to-end election management software application that provides election definition creation, ballot formation, equipment

configuration, result consolidation, adjudication and report creation. Electionware is composed of five software groups: Define, Design, Deliver, Results and Manage.

**ExpressVote XL™**
ExpressVote XL is a hybrid paper-based polling place voting device that provides a full-face touchscreen vote capture that incorporates the printing of the voter's selections as a cast vote record, and tabulation scanning into a single unit.

**ExpressTouch®**
ExpressTouch Electronic Universal Voting System (ExpressTouch) is a DRE voting system which supports electronic vote capture for all individuals at the polling place.

**ExpressVote® Hardware 1.0**
ExpressVote Universal Voting System Hardware 1.0 (ExpressVote HW1.0) is a hybrid paper-based polling place voting device that provides touch screen vote capture that incorporates the printing of the voter's selections as a cast vote record, to be scanned for tabulation in any one of the ES&S precinct or central scanners.

**ExpressVote® Hardware 2.1**
ExpressVote Universal Voting System Hardware 2.1 (ExpressVote HW2.1) is a hybrid paper-based polling place voting device that provides touch screen vote capture that incorporates the printing of the voter's selections as a cast vote record, and tabulation scanning into a single unit. ExpressVote HW2.1 is capable of operating in either marker or tabulator mode, depending on the configurable mode that is selected in Electionware.

There are two separate versions of the ExpressVote hardware version 2.1: 2.1.0.0 and version 2.1.2.0 (6.4 & 6.8). Please note that all future references to ExpressVote HW 2.1 as used throughout the document refers to both hardware versions.

**DS200®**
DS200 is a polling place paper-based voting system, specifically a digital scanner and tabulator that simultaneously scans the front and back of a paper ballot and/or vote summary card in any of four orientations for conversion of voter selection marks to electronic Cast Vote Records (CVR).

**DS450®**
DS450 is a central scanner and tabulator that simultaneously scans the front and back of a paper ballot and/or vote summary card in any of four orientations for conversion of voter selection marks to electronic Cast Vote Records (CVR).

**DS850®**
DS850 is a central scanner and tabulator that simultaneously scans the front and back of a paper ballot and/or vote summary card in any of four orientations for conversion of voter selection marks to electronic Cast Vote Records (CVR).

**Event Log Service (ELS)**

ELS monitors and logs users' interactions with the Election Management System. Events that happen when a connection to the database is not available are logged to the Windows Operating System log through the ELS.

**Removable Media Service (RMS)**

RMS is a utility that runs in the background of the Windows operating system. RMS reads specific information from any attached USB devices so that ES&S applications such as Electionware can use that information for media validation purposes.

## Configurations

Within the scope of the ES&S EVS 6.0.4.0 voting system, three unique configurations are supported, in order to accommodate limitations of components with the ES&S EVS 6.0.4.0 voting system.

**Configuration A**

ES&S EVS 6.0.4.0: Test Configuration A is comprised of the entire suite of voting system products.

- Electionware
- ExpressVote Marker (HW 1.0)
- ExpressVote Marker/Tabulator (HW 2.1)
- ExpressVote XL
- ExpressTouch
- DS200
- DS450
- DS850

**Configuration B**

- Electionware
- ExpressVote Marker (HW 1.0)
- ExpressVote Marker/Tabulator (HW 2.1)
- DS200
- DS450
- DS850

**Configuration C**

- Electionware
- ExpressVote XL

## Mark Definition

ES&S' declared level mark recognition for the DS200, DS450 and DS850 is a mark across the oval that is 0.02" long x 0.03" wide at any direction.

## Tested Marking Devices

**Bic Grip Roller Pen**

## Language Capability

EVS 6.0.4.0 supports English, Spanish, Chinese (Cantonese), Korean, Japanese, Hindi, Bengali, Vietnamese, Tagalog, Creole, Russian, and French. Configuration C also supports Punjabi and Gujarati.

## Proprietary Components Included

This section provides information describing the components and revision level of the primary components included in this Certification.

| System Component | Software or Firmware Version | Hardware Version | Model | Comments |
|---|---|---|---|---|
| Electionware | 5.0.4.0 | | | |
| ES&S Event Log Service | 1.6.0.0 | | | |
| Removable Media Service | 1.5.1.0 | | | |
| ExpressVote HW 1.0 | 1.5.2.0 | 1.0 | | Paper-based vote capture and selection device |
| ExpressVote Previewer (1.0) | 1.5.2.0 | | | |
| ExpressVote HW 2.1 | 2.4.5.0 | 2.1.0.0 2.1.2.0 | | Hybrid paper-based vote capture and selection device and precinct count tabulator |
| ExpressVote Previewer (2.1) | 2.4.5.0 | | | |
| DS200 | 2.17.4.0 | 1.2.1, 1.2.3, 1.3, 1.3.11 | | Precinct Count Tabulator |
| DS450 | 3.1.1.0 | 1.0 | | Central Count Scanner and Tabulator |
| DS850 | 3.1.1.0 | 1.0 | | Central Count Scanner and Tabulator |
| ExpressVote XL | 1.0.3.0 | 1.0 | | Hybrid full-faced paper-based vote capture and selection device and precinct count tabulator |
| ExpressTouch | 1.0.3.0 | 1.0 | | DRE |
| Delkin USB Flash Drive | | USB Flash Drive | Bitlocker 32.2MB | BitLocker USB Flash Drive |
| ExpressVote Rolling Kiosk | | 1.0 | 98-00049 | Portable Voting Booth |
| Voting Booth | | N/A | 98-00051 | Stationary Voting Booth |
| Quad Express Cart | | N/A | 41404 | Portable Voting Booth |
| MXB ExpressVote Voting Booth | | N/A | 95000 | Sitting and Standing Voting Booth |

| System Component | Software or Firmware Version | Hardware Version | Model | Comments |
|---|---|---|---|---|
| ExpressVote Single Table | | N/A | 87033 | Voting Table for One Unit |
| ExpressVote Double Table | | N/A | 87032 | Voting Table for Two Units |
| ADA Table | | N/A | 87031 | Voting Table for One Unit |
| DS200 Ballot Box | | 1.0, 1.1 | 98-00009 | Collapsible Ballot Box |
| DS200 Ballot Box | | 1.2, 1.3, 1.4, 1.5 | 57521 | Plastic ballot box |
| DS200 Tote Bin | | 1.0 | 00074 | Tote Bin Ballot Box |
| DS450 Cart | | N/A | 3002 | |
| DS850 Cart | | N/A | 6823 | |
| Universal Voting Console | | 1.0 | 98-00077 | Detachable ADA support peripheral |
| Tabletop Easel | | N/A | 14040 | |
| ExpressTouch Voting Booth | | N/A | 98-00081 | Stationary Voting Booth |
| SecureSetup | 2.1.0.3 | | | Proprietary Hardening Script |

## COTS Software

| Manufacturer | Application | Version |
|---|---|---|
| Microsoft Corporation | Server 2008 | R2 w/ SP1 (64-bit) |
| Microsoft Corporation | Windows 7 Professional | SP1 (64-bit) |
| Microsoft Corporation | Windows 7 Enterprise | SP1 (64-bit) |
| Microsoft Corporation | WSUS Microsoft Windows Offline Update Utility | 11.5 |
| Symantec | Endpoint Protection | 14.2.0_MP1 (64-bit) |
| Symantec | Symantec Endpoint Protection Intelligent Updater (File-Based Protection) | 20190122-001-core15sdsv5i64.exe |
| Symantec | Symantec Endpoint Protection Intelligent Updater (Network-Based Protection) | 20190121-062-IPS_IU_SEP_14RU1.exe |
| Symantec | Symantec Endpoint Protection Intelligent Updater (Behavior-Based Protection) | 20190115-001-SONAR_IU_SEP.exe |
| Gigabyte | WindowsImageTool | B17.1116.01 |
| Cerberus | CerberusFTP Server – Enterprise | 10.0.5 (64-bit) |
| Adobe | Acrobat | XI |
| Microsoft Corporation | Visual C++ Redistributable | en_visual_cpp_2015_redistributable_x86_8487157.exe (32-bit) |
| RSA Security | RSA BSAFE Crypto-C ME for Windows 32-bit | 4.1 |
| OpenSSL | OpenSSL | 2.0.12 |
| OpenSSL | OpenSSL | 2.0.16 |
| OpenSSL | OpenSSL | 1.02d |
| OpenSSL | OpenSSL | 1.02h |
| OpenSSL | OpenSSL | 1.02k |

## COTS Hardware

| Manufacturer | Hardware | Model/Version |
|---|---|---|
| Dell | EMS Server | PowerEdge T420, T630 |
| Dell | EMS Client or Standalone Workstation | Latitude 5580, E6430 OptiPlex 5040, 5050, 7020 |
| Dell | Trusted Platform Module (TPM) Chip version 1.2 | R9X21 |
| Innodisk | USB EDC H2SE (1GB) for ExpressVote 1.0 | DEEUH1-01GI72AC1SB |
| Innodisk | USB EDC H2SE (16GB) for ExpressVote 2.1 | DEEUH1-16GI72AC1SB |
| Delkin | USB Flash Drive (512MB, 1GB, 2GB, 4GB, 8GB) | N/A |
| Delkin | Validation USB Flash Drive (16 GB) | N/A |
| Delkin | USB Embedded 2.0 Module Flash Drive | MY16TNK7A-RA042-D/ 16 GB |
| Delkin | Compact Flash Memory Card (1GB) | CE0GTFHHK-FD038-D |
| Delkin | Compact Flash Memory Card Reader/Writer | 6381 |
| Delkin | CFAST Card (2GB, 4GB) | N/A |
| Lexar | CFAST Card Reader/Writer | LRWCR1TBNA |
| CardLogix | Smart Card | CLXSU128kC7/ AED C7 |
| SCM Microsystems | Smart Card Writer | SCR3310 |
| Avid | Headphones | 86002 |
| Zebra Technologies | QR code scanner (Integrated) | DS457-SR20009, DS457-SR20004ZZWW |
| Symbol | QR Code scanner (External) | DS9208 |
| Dell | DS450 Report Printer | S2810dn |
| OKI | DS450 and DS850 Report Printer | B431dn, B431d, B432DN |
| OKI | DS450 and DS850 Audit Printer | Microline 420 |
| APC | DS450 UPS | Back-UPS Pro 1500, Smart-UPS 1500 |
| APC | DS850 UPS | Back-UPS RS 1500, Pro 1500 |
| Tripp Lite | DS450 and DS850 Surge Protector | Spike Cube |
| Seiko Instruments | Thermal Printer | LTPD-347B |
| NCR/Nashua | Paper Roll | 2320 |
| Fujitsu | Thermal Printer | FTP-62GDSL001, FTP-63GMCL153 |

## Configuration Diagrams

### Configuration A



## Configuration B



## Configuration C



## System Limitations

This table depicts the limits the system has been tested and certified to meet.

| System Characteristic | Boundary or Limitation | Limiting Component |
|---|---|---|
| Max. precincts allowed in an election | 9,900 | Electionware |
| Max. ballot styles in an election | 15,000 | Electionware |
| Max. candidates allowed per election | 10,000 | Electionware |
| Max. contests allowed in an election | 10,000 | Electionware |
| Max. number of parties allowed | General election: 75<br>Primary election: 30 | Electionware |
| Max. District Types/Groups | 25 | Electionware |
| Max. districts of a given type | 250 | |
| Max. Contests allowed per ballot style | 500 | |
| Max. Reporting Groups in an election | 14 | Electionware |
| Max. candidates allowed per contest | 230 | Electionware |
| Max. "Vote For" per contest | 230 | Electionware |
| Max. ballots per batch | 1,500 | DS45/DS850 |

## Component Limitations:

### Electionware

1. Electionware software field limits were calculated based on an average character width for ballot and report elements. Some uses and conditions, such as magnified ballot views or combining elements on printed media or ballot displays, may result in field limits (and associated warnings) lower than those listed. Check printed media and displays before finalizing the election.
2. The Electionware Export Ballot Images function is limited to 250 districts per export.
3. Electionware supports the language special characters listed in the System Overview, Attachment 1. Language special characters other than those listed may not appear properly when viewed on equipment displays or reports.
4. The Straight Party feature must not be used in conjunction with the Single or Multiple Target Cross Endorsement features.

5. The 'MasterFile.txt' and the 'Votes File.txt' do not support results for elections that contain multiple sheets or multiple ExpressVote cards per voter. These files can be produced using the Electionware > Reporting > Tools > Export Results menu option. This menu option is available when the Rules Profile is set to "Illinois".

**Paper Ballot Limitations**

1. The paper ballot code channel, which is the series of black boxes that appear between the timing track and ballot contents, limits the number of available ballot variations depending on how a jurisdiction uses this code to differentiate ballots. The code can be used to differentiate ballots using three different fields defined as: Sequence (available codes 1-16,300), Type (available codes 1-30) or Split (available codes 1-18).
2. If Sequence is used as a ballot style ID, it must be unique election-wide and the Split code will always be 1. In this case the practical style limit would be 16,300.
3. The ExpressVote activation card has a limited ballot ID based on the three different fields defined as: Sequence (available codes 1-16,300), Type (available codes 1-30) or Split (available codes 1-18).
4. Grid Portrait and Grid Landscape ballot types are New York specific and not for general use.

**ExpressVote**

1. ExpressVote capacities exceed all documented limitations for the ES&S election management, vote tabulation and reporting system. For this reason, Election Management System and ballot tabulator limitations define the boundaries and capabilities of the ExpressVote system as the maximum capacities of the ES&S ExpressVote are never approached during testing.

**ExpressVote XL**

1. ExpressVote XL capacities exceed all documented limitations for the ES&S election management, vote tabulation and reporting system. For this reason, Election Management System and ballot tabulator limitations define the boundaries and capabilities of the ExpressVote XL system as the maximum capacities of the ES&S ExpressVote XL are never approached during testing.
2. ExpressVote XL does not offer open primary support based on the ES&S definition of Open Primary, which is the ability to select a party and vote based on that party.
3. ExpressVote XL does not support Massachusetts Group Vote.
4. ExpressVote XL does not support Universal Primary Contest.
5. ExpressVote XL does not support Multiple Target Cross Endorsement.
6. ExpressVote XL does not support Reviewer or Judges Initials boxes.
7. ExpressVote XL does not support multi-card ballots.
8. In a General election, one ExpressVote XL screen can hold 32 party columns if set up as columns or 16 party rows if set up as rows.
9. ExpressVote XL does not support Team Write-In.

**ExpressTouch**

1. ExpressTouch capacities exceed all documented limitations for the ES&S election management, vote tabulation and reporting system. For this reason, Election Management System limitations define the boundaries and capabilities of the ExpressTouch system as the maximum capacities of the ES&S ExpressTouch are never approached during testing.

2. ExpressTouch does not offer open primary support, which is the ability to select a party and vote based on that party.
3. ExpressTouch does not support Massachusetts Group Vote.
4. ExpressTouch does not support Universal Primary Contest.
5. ExpressTouch does not support Multiple Target Cross Endorsement.
6. ExpressTouch does not support Team Write-In.

**DS200**

1. The ES&S DS200 configured for an early vote station does not support precinct level results reporting. An election summary report of tabulated vote totals is supported.
2. The DS200 storage limitation for write-in ballot images is 3,600 images. Each ballot image includes a single ballot face, or one side of one page.
3. Write-in image review requires a minimum 1GB of onboard RAM.
4. To successfully use the Write-In Report, ballots must span at least three vertical columns. If the column is greater than 1/3 of the ballot width (two columns or less), the write-in image will be too wide to print on the tabulator report tape.

## Functionality

**VVSG 1.0 Supported Functionality Declaration**

| Feature/Characteristic | Yes/No | Comment |
|---|---|---|
| Voter Verified Paper Audit Trails | | |
| VVPAT | No | |
| Accessibility | | |
| Forward Approach | Yes | |
| Parallel (Side) Approach | Yes | |
| Closed Primary | | |
| Primary: Closed | Yes | |
| Open Primary | | |
| Primary: Open Standard  (provide definition of how supported) | Yes | Configuration B only |
| Primary: Open Blanket  (provide definition of how supported) | No | |
| Partisan & Non-Partisan: | | |
| Partisan & Non-Partisan:  Vote for 1 of N race | Yes | |
| Partisan & Non-Partisan: Multi-member ("vote for N of M") board races | Yes | |
| Partisan & Non-Partisan: "vote for 1" race with a single candidate and write-in voting | Yes | |
| Partisan & Non-Partisan "vote for 1" race with no declared candidates and write-in voting | Yes | |
| Write-In Voting: | | |
| Write-in Voting: System default is a voting position identified for write-ins. | Yes | |
| Write-in Voting: Without selecting a write in position. | Yes | |
| Write-In: With No Declared Candidates | Yes | |
| Write-in: Identification of write-ins for resolution at central count | Yes | |
| Primary Presidential Delegation Nominations & Slates: | | |
| Primary Presidential Delegation Nominations:  Displayed delegate slates for each presidential party | No | |

| Feature/Characteristic | Yes/No | Comment |
|---|---|---|
| Slate & Group Voting: one selection votes the slate. | No | |
| Ballot Rotation: | | |
| Rotation of Names within an Office; define all supported rotation methods for location on the ballot and vote tabulation/reporting | Yes | |
| Straight Party Voting: | | |
| Straight Party: A single selection for partisan races in a general election | Yes | |
| Straight Party: Vote for each candidate individually | Yes | |
| Straight Party: Modify straight party selections with crossover votes | Yes | |
| Straight Party: A race without a candidate for one party | Yes | |
| Straight Party: N of M race (where "N">1) | Yes | |
| Straight Party: Excludes a partisan contest from the straight party selection | Yes | |
| Cross-Party Endorsement: | | |
| Cross party endorsements, multiple parties endorse one candidate. | Yes | |
| Split Precincts: | | |
| Split Precincts: Multiple ballot styles | Yes | |
| Split Precincts: P & M system support splits with correct contests and ballot identification of each split | Yes | |
| Split Precincts: DRE matches voter to all applicable races. | Yes | |
| Split Precincts: Reporting of voter counts (# of voters) to the precinct split level; Reporting of vote totals is to the precinct level | Yes | It is possible to list the number of voters. |
| Vote N of M: | | |
| Vote for N of M: Counts each selected candidate, if the maximum is not exceeded. | Yes | |
| Vote for N of M: Invalidates all candidates in an overvote (paper) | Yes | |
| Recall Issues, with options: | | |
| Recall Issues with Options: Simple Yes/No with separate race/election. (Vote Yes or No Question) | No | |
| Recall Issues with Options: Retain is the first option, Replacement candidate for the second or more options (Vote 1 of M) | No | |
| Recall Issues with Options: Two contests with access to a second contest conditional upon a specific vote in contest one. (Must vote Yes to vote in 2nd contest.) | No | |
| Recall Issues with Options: Two contests with access to a second contest conditional upon any vote in contest one. (Must vote Yes to vote in 2nd contest.) | No | |
| Cumulative Voting | | |
| Cumulative Voting: Voters are permitted to cast, as many votes as there are seats to be filled for one or more candidates. Voters are not limited to giving only one vote to a candidate. Instead, they can put multiple votes on one or more candidate. | No | |
| Ranked Order Voting | | |
| Ranked Order Voting: Voters can write in a ranked vote. | No | |
| Ranked Order Voting: A ballot stops being counting when all ranked choices have been eliminated | No | |

| Feature/Characteristic | Yes/No | Comment |
|---|---|---|
| Ranked Order Voting: A ballot with a skipped rank counts the vote for the next rank. | No | |
| Ranked Order Voting: Voters rank candidates in a contest in order of choice. A candidate receiving a majority of the first choice votes wins. If no candidate receives a majority of first choice votes, the last place candidate is deleted, each ballot cast for the deleted candidate counts for the second choice candidate listed on the ballot. The process of eliminating the last place candidate and recounting the ballots continues until one candidate receives a majority of the vote | No | |
| Ranked Order Voting: A ballot with two choices ranked the same, stops being counted at the point of two similarly ranked choices. | No | |
| Ranked Order Voting: The total number of votes for two or more candidates with the least votes is less than the votes of the candidate with the next highest number of votes, the candidates with the least votes are eliminated simultaneously and their votes transferred to the next-ranked continuing candidate. | No | |
| Provisional or Challenged Ballots | | |
| Provisional/Challenged Ballots: A voted provisional ballots is identified but not included in the tabulation but can be added in the central count. | Yes | |
| Provisional/Challenged Ballots: A voted provisional ballots is included in the tabulation, but is identified and can be subtracted in the central count | Yes | |
| Provisional/Challenged Ballots: Provisional ballots maintain the secrecy of the ballot. | Yes | |
| Overvotes (must support for specific type of voting system) | | |
| Overvotes: P & M: Overvote invalidates the vote. Define how overvotes are counted. | Yes | |
| Overvotes: DRE: Prevented from or requires correction of overvoting. | Yes | |
| Overvotes: If a system does not prevent overvotes, it must count them. Define how overvotes are counted. | Yes | |
| Overvotes: DRE systems that provide a method to data enter absentee votes must account for overvotes. | Yes | |
| Undervotes | | |
| Undervotes: System counts undervotes cast for accounting purposes | Yes | |
| Blank Ballots | | |
| Totally Blank Ballots: Any blank ballot alert is tested. | Yes | |
| Totally Blank Ballots: If blank ballots are not immediately processed, there must be a provision to recognize and accept them | Yes | |
| Totally Blank Ballots: If operators can access a blank ballot, there must be a provision for resolution. | Yes | |
| Networking | | |
| Wide Area Network – Use of Modems | No | |
| Wide Area Network – Use of Wireless | No | |
| Local Area Network – Use of TCP/IP | No | |
| Local Area Network – Use of Infrared | No | |

| Feature/Characteristic | Yes/No | Comment |
|---|---|---|
| Local Area Network – Use of Wireless | No | |
| FIPS 140-2 validated cryptographic module | Yes | |
| Used as (if applicable): | | |
| Precinct counting device | Yes | DS200, ExpressTouch, ExpressVote HW2.1, ExpressVote XL |
| Central counting device | Yes | DS450 and/or DS850 |

## Baseline Certification Engineering Change Order's (ECO)

This table depicts the ECO's certified with the voting system:

| Change ID | Date | Component | Description | Inclusion |
|---|---|---|---|---|
| ECO 938 | 12/14/18 | DS200 | Texture Free Surface for Security Seals | DeMinimis Optional |
| ECO 982 | 2/20/19 | ExpressVote XL | Add Cord Wrap Hooks, Filler for Card Bin and Shipping Bracket | DeMinimis Optional |
| ECO 988 | 4/29/19 | ExpressVote | Add End of Life Zebra Scanner | DeMinimis Optional |
| ECO 989 | 4/29/19 | ExpressVote | Adds Updated USB Thumb Drive Cover | DeMinimis Optional |
| ECO 991 | 4/29/19 | DS200 | Add Hardware Rev 1.3.11 | Non-DeMinimis Optional |
| ECO 993 | 4/29/19 | DS450 | Adds Oki 432 Report Printer and APC Smart-UPS 1500 | Non-DeMinimis Optional |
| ECO 1000 | 2/13/19 | DS200 Collapsible Ballot Box | Adds Hardware Rev 1.1 | De Minimis Optional |
| ECO 1004 | 12/14/18 | DS450 | Add Oki 432 Report Printer Due to End of Life | De Minimis Optional |
| ECO 1005 | 12/14/18 | DS850 | Add Oki 432 Report Printer Due to End of Life | De Minimis Optional |
| ECO 1016 | 2/13/19 | ExpressVote Voting Booth | Added Enhanced Doors | De Minimis Optional |
| ECO 2160 | 4/29/19 | ExpressVote | Lengthen Detachable Key Pad Cord | De Minimis Optional |

Exhibit F

# Exhibit F



**KATIE HOBBS**
SECRETARY OF STATE
*State of Arizona*

February 24, 2020

Susan Parmer
State Certification Manager
Election Systems & Software
11208 John Galt Blvd
Omaha, NE 68137

Dear Ms. Parmer,

Elections Systems & Software (ES&S) has requested certification of Engineering Change Order # 1045 (ECO) for software components of the ExpressVote HW 1.0 & 2.1 as it relates to the EVS 6.0.4.0 voting system release previously conditionally certified for use in Arizona elections.

The Secretary of State Equipment Certification Advisory Committee, appointed by me pursuant to A.R.S. § 16-442, met in a public meeting held January 28, 2020 to review your application and supporting documentation. The Committee forwarded their findings and recommendation for certification.

I concur with the Committee report and hereby approve and grant certification of ECO # 1045 which includes:

| ECO # | Component | Hardware Version | Software/Firmware Version |
|-------|-----------|------------------|---------------------------|
| 1045 | ExpressVote | HW 1.0 | 1.5.2.1 |
| | ExpressVote | HW 2.1 | 2.4.5.1 |

In addition, I believe ES&S has demonstrated that ECO # 1045 has fully addressed the missing Spanish translation issue previously identified on the ExpressVote units which needed to be resolved prior to January 2, 2021 or the system may be subject to decertification. Therefore, I grant certification of EVS 6.0.4.0 Voting System for use in Arizona's state, county, city, and town elections with the following conditions:

1) The ExpressVote units will not be programmed and/or used as a tabulation unit;

2) Certification of the electronic adjudication feature contingent on the process being conducted in accordance with A.R.S. § 16-621(B) and the Elections Procedures Manual.

As a reminder, before the voting system may be used in a state election, the application source code must be placed in escrow with the State of Arizona as the recipient of escrow. Should questions arise regarding this certification, please contact Janine Petty, Deputy State Election Director at 602-542-6209.

Sincerely,

Katie Hobbs
Secretary of State

Exhibit G

# Exhibit G

## Arizona Supreme Court
### Civil Special Action

| CV-22-0217-SA | DANIEL WOOD et al v BRNOVICH/HOBBS/DUCEY/BRUTINEL |
|---|---|

**Appellate Case Information**

| Case Filed: | 31-Aug-2022 | Archive on: 8-Sep-2032 (planned) | Dept/Composition |
|---|---|---|---|
| Case Closed: | 8-Sep-2022 | | |

**Side 1. DANIEL WOOD, BRIAN STEINER and PAUL RICE, Petitioner**

(Litigant Group) DANIEL WOOD, BRIAN STEINER and PAUL RICE

- **Daniel Wood**
- **Brian Steiner**
- **Paul Rice**

**Side 2. MARK BRNOVICH, in his official Capacity as the Attorney General for the State of Arizona; KATIE HOBBS, in her official capacity as the Arizona Secretary of State; DOUG DUCEY, in his official capacity as the Governor of the State of Arizona; ROBERT M. BRU, Respondent**

(Litigant Group) MARK BRNOVICH, in his official Capacity as the Attorney General for the State of Arizona; KATIE HOBBS, in her official capacity as the Arizona Secretary of State; DOUG DUCEY, in his official capacity as the Governor of the State of Arizona; ROBERT M. BRU

- **Mark Brnovich, Arizona Attorney General's Office**
- **Katie Hobbs, Arizona Secretary of State**

### CASE STATUS

| Sep 8, 2022......Decision Rendered | Aug 31, 2022....Pending |
|---|---|

### CASE DECISION

**08-Sep-2022   ORDER**

| * Before us is the fourth matter filed directly in this Court by some combination of petitioners challenging the 2020 election results. | Filed: | **08-Sep-2022** | Mandate: |
|---|---|---|---|
| | | Decision Disposition | |
| On May 7, 2021, Petitioner Brian Steiner and others filed an action styled, We the People, ex rel., v. Ducey, et al. | | *Dismissed* | |

Ann Timmer

### 5 PROCEEDING ENTRIES

| 1. | 31-Aug-2022 | FILED:  Verified Petition for Writ of Mandamus (Treated as a Petition for Special Action); Declaration of Brian Steiner (Petitioners Wood, et al., Pro Se) |
|---|---|---|
| 2. | 31-Aug-2022 | FILED:  Consolidated Motion for Temporary Restraining Order and Memorandum of Law in Support Thereof (Petitioners Wood, et al., Pro Se) |
| 3. | 7-Sep-2022 | RECEIPT No.: ASC2022-00857 ; $280.00 Applied to: DANIEL WOOD, BRIAN STEINER and PAUL RICE - Class A Filing Fee ($280.00) Paid for: DANIEL WOOD, BRIAN STEINER and PAUL RICE - By nCourt LLC Portal (Memo: 3200A3B9-37C5-495E-8C00-B3856C7091E3) |
| 4. | 8-Sep-2022 | FILED:  Motion for Counsel for Writ of Mandamus and TRO Filed August 31, 2022 (Petitioners Wood, et al) |

**Arizona Supreme Court**

**Civil Special Action**

**CV-22-0217-SA**    **DANIEL WOOD et al v BRNOVICH/HOBBS/DUCEY/BRUTINEL**

5 PROCEEDING ENTRIES

5.        8-Sep-2022    Before us is the fourth matter filed directly in this Court by some combination of petitioners challenging the 2020 election results.

On May 7, 2021, Petitioner Brian Steiner and others filed an action styled, We the People, ex rel., v. Ducey, et al., CV-21-0114-SA. The petitioners contended that twenty elected officials were "alleged usurpers" who were "in office illegally" and if not, the respondents should "prove otherwise." In that action, the petitioners alleged that voting systems were "contractually uncertified and illegal" because "[m]achines or devices used at any election for federal, state or county offices may only be certified for use ... if they comply with the help America vote act of 2002 and if those machines or devices have been tested and approved by a laboratory that is accredited pursuant to the help America vote act of 2022." For the relief requested, the petitioners asked that each of the twenty elected officials "be removed from the trusted office." This Court dismissed the petition because it could find no legal basis for the relief requested and because the action was untimely under A.R.S. § 12-673(A) and observing:

Although our courts have recognized that electors may have an implied private right of action to challenge voting machines' compliance with applicable statutory requirements in certain limited circumstances, see, e.g., Chavez v. Brewer, 222 Ariz. 309, 318 ¶ 28 (App. 2009), nothing in the statutes Petitioners cite grants them a private right of action to remove office holders and sit in their stead. In fact, in a quo warranto action, "a claimant to an office must rely for judgment only on the strength of his own title and not upon any infirmity or weakness in the defendant's title." Tracy v. Dixon, 119 Ariz. 165, 166 (1978). (Emphasis added.)

On October 21, 2021, Petitioners Rayana B. Eldan, Brian Steiner, and Daniel Wood, pro se, filed an "Affidavit of Complaint, Petition for Redress by Writs of Mandamus." Petitioners asked this Court for an order directing the Secretary of State to rescind the Certificates of Election of the Presidential Electors and alleging that the certificates were "invalid and void" and also directing the County Boards of Supervisors and Clerks to rescind the Certificates of Election issued in the county elections. Eldan et al. v. Katie Hobbs, Secretary of State, et al. CV-21-0255-SA. The entire Court entered an order dismissing that proceeding on November 8, 2021, quoting the above language from the dismissal order in the CV-21-0114-SA case and stating:

The Court will not attempt to further instruct Petitioners on the need to plead factual allegations upon which relief can be granted in accordance with pertinent court rules. However, irrespective of the Petitioners' claims of election irregularities, they have alleged no basis for relief under which they may obtain an order directing state officials to "rescind" prior elections or to remove elected office holders from office .... (Emphasis added.)

In Wood v. Secretary of State Katie Hobbs, CV-21-0149—SA, Petitioner Daniel Clayton Wood filed a petition on June 4, 2021, and alleged that "Our voting equipment for use in elections did not have certification from any accredited laboratories," and demanded that the Secretary of State "respond to the questions above within 5 days, by affidavit, before this court, sworn under penalty of perjury. If you do not respond within 5 days, you agree by acquiescence, that you are knowingly interfering with the rights of the people ...." On June 8, 2021 the Court dismissed the petition because Petitioner had failed to comply with A.R.S. § 12-2043 and therefore could not bring a quo warranto proceeding.

In the instant petition, Petitioners Daniel Wood, Brian Steiner and Paul Rice, purporting to be acting with the assistance of Florida counsel, have filed a "Consolidated Motion for Temporary Restraining Order and Memorandum of Law in Support Thereof." In the motion, Petitioners advise that federal law requires that records, documents, and evidence from the 2020 presidential election must be preserved for twenty-two months, which, they contend, expires September 3, 2022. Therefore, the Court should "issue a Temporary Restraining Order to prevent the Defendants, and anyone acting in concert with the Defendants, from destroying the records, documents and evidence pertaining to Arizona's 2020 presidential election. The Plaintiffs may need the records, documents and evidence pertaining to Arizona's 2020 presidential election in their presentation of their case in chief," and to pursue their "42 U.S.C. § 1983 violation of civil rights case."

In their "Petition for Writ of Mandamus" brought under A.R.S.   § 12-2021, also filed in this action, Petitioner argue that the Attorney General, Governor, Secretary of State, and Chief Justice illegally certified the election. They contend that under A.R.S. § 16-442, machines or devices used in election for federal, state, or county offices may only be certified for use if they comply with the Help America Vote Act of 2002 and if they have been tested and approved by a laboratory. "If voting hardware and/or software were used in violation of Arizona law, then said election is void ab initio and said election cannot be lawfully certified by any Defendant." Petitioners contend that because the legal requirements of A.R.S. § 16-442 were not met, the defendants had no authority to certify the results. They reason, "If none of the Defendants had the legal authority to certify Arizona's 2020 presidential election results, then this Court must issue a peremptory writ of mandamus   . . .   compelling the Defendants to decertify Arizona's 2020 presidential election and to rerun Arizona's 2020 presidential election in accordance with Arizona law." They ask that the Court "issue a peremptory Writ of Mandamus" compelling defendants to decertify the election; recall the Biden electors, "remove the Maricopa County votes from the 2020 election results as they were/are void ab initio, order Maricopa County to rerun the Arizona 2020 presidential election in accordance with the law, as soon as possible, by way of a special election, with paper ballots only, on a single election day, omitting Zuckerboxes and 'no excuse' absentee mail-in ballots, with the paper ballots being counted by hand with multiple members of all political parties present to observe, with unobstructed 24/7 public livestream cameras of all vote counting so that Arizona can restore voter confidence and Arizona's commitment to free and fair elections, with the Defendants then adding Maricopa County's presidential election votes to the remaining votes and ordering the Defendants to then certify a lawful 2020 presidential election," and such other relief as the Court deems appropriate.

First, the challenge to the election is untimely. The laws of Arizona set forth the process for contesting an election—a process that requires the filing of a contest within five days after the canvass of the election. Election contests based on alleged improprieties are not new. See Moore v. City of Page, 148 Ariz. 151, 155 (App. 1986)(pointing out that election contests have been brought based on a claim that unregistered voters have voted; that the election was held in a building other than that designated in the election notice; that ineligible electors were allowed to vote and that the ballot was not in the form required; and agreeing in that case that the failure to purge voters would support a contest "on account of illegal votes." (internal citations omitted)). Such contests must, however, be timely:

*Information presented in this document may not reflect case activity and is subject to change without notice.*

**Arizona Supreme Court**

**Civil Special Action**

**CV-22-0217-SA**          **DANIEL WOOD et al v BRNOVICH/HOBBS/DUCEY/BRUTINEL**

It is commonly stated that election contests are purely statutory and dependent upon statutory provisions for their conduct. Brown v. Superior Court, 81 Ariz. 236 (1956); Fish v. Redeker, 2 Ariz. App. 602 (1966). The failure of a contestant to an election to strictly comply with the statutory requirements is fatal to his right to have the election contested. Dale v. Greater Anchorage Area Borough, 439 P.2d 790 (Alaska, 1968). We have held particularly that the "'requirements as to the time within which the contest must be brought are regarded as mandatory, and unless strictly complied with The court is without jurisdiction to proceed'"; Brown v. Superior Court, supra, 81 Ariz. at 239. Citing 29 C.J.S. Elections § 259.

The rationale for requiring strict compliance with the time provisions for initiating a contest is the strong public policy favoring stability and finality of election results. (Emphasis added; citations cleaned up.)

Donaghey v. Att'y Gen., 120 Ariz. 93, 95 (1978) (emphasis added).

Second, as this Court previously observed, "irrespective of the Petitioners' claims of election irregularities, they have alleged no basis for relief under which they may obtain an order directing state officials to 'rescind' prior elections or to remove elected office holders from office ...."

The Court, en banc, observes that Petitioners have cited no authority for the proposition that they or anyone else may overturn the Arizona statutes that govern both the conduct of elections and the challenges to the results of such elections. Likewise, they cannot dictate the terms of a proposed effort to "rerun the 2020 presidential election," which was certified almost two years ago. Therefore,

IT IS ORDERED dismissing the petition.

IT IS FURTHER ORDERED denying the request for temporary restraining order.

IT IS FURTHER ORDERED denying the motion for expedited consideration as moot.

IT IS FURTHER ORDERED denying Petitioners' "Motion for Counsel for Writ of Mandamus and TRO" as moot.  (Hon. Ann A. Scott Timmer)

NOV 29 2022 PM 2:36

FILED

2022 NOV 28 PM 4:19

CLERK OF SUPERIOR COURT
BY: _____

1  D. Andrew Gaona (028414)
   **COPPERSMITH BROCKELMAN PLC**
2  2800 North Central Avenue, Suite 1900
   Phoenix, Arizona 85004
3  T: (602) 381-5486
   agaona@cblawyers.com
4

5  Sambo (Bo) Dul (030313)
   **STATES UNITED DEMOCRACY CENTER**
6  8205 South Priest Drive, #10312
   Tempe, Arizona 85284
7  T: (480) 253-9651
   bo@statesuniteddemocracy.org
8
   *Attorneys for Plaintiff*
9  *Arizona Secretary of State Katie Hobbs*

10          **ARIZONA SUPERIOR COURT**

11              **COCHISE COUNTY**

12  KATIE HOBBS, in her official capacity as      ) No. **CV 2022 00553**
    Arizona Secretary of State,                   )
13                                                )
                                                  ) **CERTIFICATE REGARDING**
14                  Plaintiff,                    ) **COMPULSORY ARBITRATION**
                                                  )
15          v.                                    )
                                                  )
16  TOM CROSBY, ANN ENGLISH, PEGGY                )
    JUDD, in their official capacities as members )
17  of the Cochise County Board of Supervisors;   )
    and COCHISE COUNTY, a political               )
18  subdivision of the State of Arizona,          )
                                                  )
19                  Defendants.                   )
                                                  )
20                                                )
                                                  )
21

22          The undersigned certifies, in accordance with Ariz. R. Civ. P. 72(e)(1), that this case seeks

23  only injunctive relief and **IS NOT** subject to the Uniform Rules of Procedure for Arbitration.

24

25

26

1144557.1

Respectfully submitted this 28th day of November, 2022.

COPPERSMITH BROCKELMAN PLC

By _____
         D. Andrew Gaona

STATES UNITED DEMOCRACY CENTER
Sambo (Bo) Dul

*Attorneys for Plaintiff Arizona Secretary of State Katie Hobbs*

RCVD COCHISE CNTY BOS

FILED

2022 NOV 28 PM 4: 19

CLERK OF SUPERIOR COURT
BY

1   D. Andrew Gaona (028414)
    **COPPERSMITH BROCKELMAN PLC**
2   2800 North Central Avenue, Suite 1900
    Phoenix, Arizona 85004
3   T: (602) 381-5486
    agaona@cblawyers.com
4

5   Sambo (Bo) Dul (030313)
    **STATES UNITED DEMOCRACY CENTER**
6   8205 South Priest Drive, #10312
    Tempe, Arizona 85284
7   T: (480) 253-9651
    bo@statesuniteddemocracy.org
8

9   *Attorneys for Plaintiff*
    *Arizona Secretary of State Katie Hobbs*
10
                    **ARIZONA SUPERIOR COURT**
11
                       **COCHISE COUNTY**
12
13  KATIE HOBBS, in her official capacity as      ) No. **CV 2022 00553**
    Arizona Secretary of State,                   )
14                                                )
                    Plaintiff,                    ) **APPLICATION FOR ORDER TO**
15                                                ) **SHOW CAUSE**
            v.                                    )
16                                                )
    TOM CROSBY, ANN ENGLISH, PEGGY               )
17  JUDD, in their official capacities as members )
    of the Cochise County Board of Supervisors;   )
18  and COCHISE COUNTY, a political               )
    subdivision of the State of Arizona,          )
19                                                )
                    Defendants.                   )
20                                                )
21                                                )
                                                  )
22          Pursuant to Rule 7.3 of the Arizona Rules of Civil Procedure and Rule 4(c) of the Arizona

23  Rules of Procedure for Special Actions, and for the reasons set forth in the Verified Complaint

24  for Special Action filed herewith, Plaintiff Katie Hobbs, in her official capacity as Arizona

25  Secretary of State ("Secretary"), respectfully requests that this Court promptly enter an Order to

26  Show Cause requiring Defendants to show cause why the relief sought in the Verified Complaint

1143994.2

1    for Special Action should not be granted. A proposed form of order is submitted herewith.

2         Because this is a statutory special action and a show cause procedure is being used, "the
3    court shall set a speedy return date" on this Application. Ariz. R.P.S.A. 4(c). The Secretary thus
4    requests that the Court order that: (1) Defendants shall file a response to Plaintiff's Verified
5    Complaint for Special Action by no later than November 29, 2022 at 5:00 PM; (2) Plaintiff may
6    file a reply, if it so chooses, by no later than November 30, 2022 at 12:00 P.M.; and (3)
7    Defendants shall appear at the earliest date and time available to the Court to show cause why
8    the requested relief should not be granted. Because of the extremely expedited nature of this
9    proceeding, and further because no facts are reasonably in dispute, the Secretary requests that
10   the parties be permitted to appear telephonically or by video conference at the hearing.

11        As detailed in the Verified Complaint, this is a special action to: (1) compel Defendants
12   and their agents to meet and canvass the Cochise County election by December 1, 2022 to allow
13   the Secretary sufficient time to meet the final December 8, 2022 deadline for completing the
14   statewide canvass; or (2) alternatively, request a declaratory judgment and injunction declaring
15   the actions of the Cochise County Board of Supervisors ("Board") to be unlawful and compelling
16   Defendants and their agents to meet and canvass the countywide election by December 1, 2022.

17        Special action relief is appropriate when an officer "has failed . . . to perform a duty
18   required by law as to which he has no discretion," or "has proceeded or is threatening to proceed
19   without or in excess of jurisdiction or legal authority." Ariz. R.P.S.A. 3(a), (b). That is exactly
20   the case here. Specifically, the Board has, without justification, failed to fulfill its mandatory
21   duty to meet and approve its canvass of the results of the 2022 General Election by the statutory
22   deadline of November 28, 2022.

23        Arizona law provides, with a limited exception inapplicable here, that the Board "shall
24   meet and canvass the election not less than six days nor more than twenty days following the
25   election." A.R.S. § 16-642(A) (emphasis added). The statute's plain language makes clear that

26

1   this duty is not discretionary. The Board was thus required to meet and canvass the election by
2   November 28th, but it has failed to do so.

3          The Board held a special meeting on the evening of November 18, 2022, where it heard
4   statements from various conspiracy theorists – known for filing spurious lawsuits before the
5   Arizona courts – who made demonstrably false allegations about the vote tabulation equipment
6   used in Cochise County being improperly certified under state and federal law. At that meeting,
7   both Cochise County Elections Director Lisa Marra and State Elections Director Kori Lorick
8   emphasized that claims of improper certification were baseless. Nonetheless, Board members
9   Tom Crosby and Peggy Judd voted to delay the canvass until 10 a.m. on November 28 – the last
10  day possible under Arizona law – purportedly so that someone with the requisite "expertise"
11  could prove to them that the machines were properly certified by an accredited laboratory.

12         On November 28, the Board met again and refused to certify the canvass by the statutory
13  deadline. In the end, the Board voted 2-1, with Supervisors Crosby and Judd voting in the
14  affirmative, to keep the agenda item related to the certification of the canvass "on the table" until
15  December 2, and that the item would only be removed from the table and voted on after the
16  Board hears from a group of individuals opposing certification and representatives of the
17  Secretary.

18         Not only does the Board's failure to act violate the applicable statute, but it will
19  potentially disenfranchise the voters of Cochise County. Arizona law requires the Secretary to
20  "canvass all offices" by the fourth Monday following the general election – here, December 5,
21  2022. See A.R.S. § 16-648; see also Ariz. Const. art. V, § 10. And while postponement of the
22  canvass is permitted if the official canvass of any county has not been received by that
23  deadline, this postponement is limited to no more than "thirty days from the date of the
24  election." See A.R.S. § 16-648(C). Thus, the very last day for the Secretary to complete the
25  statewide canvass is December 8, 2022 – only three days after the Secretary's original deadline

26

(and 10 days from today). On information and belief, the Board has no intention of canvassing the election before the December 8, 2022 deadline.

Absent this Court's intervention, the Secretary will have no choice but to complete the statewide canvass by December 8 without Cochise County's votes included. Thus, the Board's inaction not only violates the plain language of the statute, but also undermines a basic tenet of free and fair elections in this state: ensuring that every Arizonan's voice is heard.

The Board's unprecedented inaction should not disenfranchise tens of thousands of voters in Cochise County. The Secretary thus brings this action for special action relief (through a writ of mandamus) to ensure that those voters' voices are heard and their votes counted. Otherwise, the Board's failure to perform its non-discretionary duty will impede the timely and accurate canvass of results, undermine the will of Cochise County voters, and sow further confusion and doubt about the integrity of Arizona's election system.

Respectfully submitted this 28th day of November, 2022.

**COPPERSMITH BROCKELMAN PLC**

By _____
        D. Andrew Gaona

**STATES UNITED DEMOCRACY CENTER**
Sambo (Bo) Dul

*Attorneys for Plaintiff Arizona Secretary of State
Katie Hobbs*

FILED

2022 NOV 29 PM 2: 25

CLERK OF SUPERIOR COURT
BY _____

ARIZONA SUPERIOR COURT, PIMA COUNTY
   FOR THE COUNTY OF COCHISE

HON. CASEY F MCGINLEY

**COCHISE COUNTY**
**CASE NO.**   CV202200553

DATE:      November 29, 2022

KATIE HOBBS, in her official capacity as Arizona
Secretary of State,
    Plaintiff

VS.

TOM CROSBY, ANN ENGLISH, and PEGGY JUDD, in
their official capacities as members of the Cochise County
Board of Supervisors; and COCHISE COUNTY, a political
Subdivision of the State of Arizona,
    Defendants

## O R D E R

**IN CHAMBERS**

    By Order of the Cochise County Superior Court, this Division has been assigned the instant matter.

    Plaintiffs having filed a Verified Complaint for Special Action, and having requested a Show Cause Hearing,

    **IT IS ORDERED** setting an <u>**in person**</u> hearing on **Thursday, December 1, 2022 at 1:00 p.m. in Cochise County Superior Court, Courtroom 4 for three (3) hours.**

    **IT IS FURTHER ORDERED** that Plaintiffs shall serve Defendants with a copy of their Verified Complaint, associated pleadings, and this Order **no later than Tuesday, November 29, 2022 at 5:00 p.m.**

    **IT IS FURTHER OREDERED** that Defendantw shall file their answer or any other responsive pleading **no later than Wednesday, November 30, 2022, at 5:00 p.m.**

HON. CASEY F MCGINLEY

cc:    Cochise County Superior Court -Shawneen D. Serrano
        Court Community Relations
        D. Andrew Gaona, Coopersmith Brockelman, PLC, Esq. – agaona@cblawyers.com
        Sambo (Bo) Dul, Esq. – bo@statesuniteddemocracy.org
        Board of Supevisors – 1415 Melody Lane, Building G, Bisbee, AZ  85603
        Brian McIntyre, Esq. – BMcIntyre@cochise.az.gov

                                        L. Kimes
                                        Judicial Administrative Assistant

Daniel J McCauley III
McCauley Law Offices, P.C.
6638 E Ashler Hills Dr
Cave Creek, AZ 85331-6638
Direct: (480) 595-1378
Fax: (866) 388-3788 | Email: dan@mlo-az.com

*Attorneys for Defendants*
*Tom Crosby, Ann English, and Peggy Judd,*
*In their official capacities as the Cochise County Board of Supervisors*

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF COCHISE

| | |
|---|---|
| KATIE HOBBS, in her official capacity as Arizona Secretary of State,<br><br>Plaintiffs,<br><br>v.<br><br>TOM CROSBY, ANN ENGLISH, PEGGY JUDD, in their official capacities as members of the Cochise County Board of Supervisors, and COCHISE COUNTY, a political Subdivision of Arizona<br><br>Defendants. | Case No.: CV 202200553<br>*Hon. Casey McGinley Division IV Courtroom*<br><br>**COCHISE COUNTY DEFENDANTS' MOTION TO QUASH SERVICE OF PLAINTIFF'S APPLICATION FOR ORDER TO SHOW CAUSE; MEMORANDUM; AND [PROPOSED] ORDER ISO**<br><br>Date: 12/01/2022<br>Time: 1:00 PM<br>Phone: 520-432-8500 |

## MOTION

Pursuant to Rule 4 of Arizona Rules of Procedure for Special Actions ("Ariz. R. P. Spe. Act.")  and Rule 8(b) of Arizona Local Rules of Practice for Superior Court of Cochise County ("L. R. Prac. Sup. Ct."), defendants Tom Crosby, Ann English, and Peggy Judd, In their official capacities as the Cochise County Board of Supervisors (collectively "Defendants") to quash service of Plaintiffs Katie Hobbs (collectively "Plaintiffs") Application for Order to show cause on the grounds that service of process of said Order was not effected on Defendants.

## MEMORANDUM

## Statement of Facts

On November 28, 2022, Plaintiffs filed an Application for an Order to Show Cause based

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

upon the Plaintiffs Verified Special Action Complaint. Defendants were made aware of Plaintiff's filings and called an emergency meeting to select an attorney. Defendants voted unanimously to hire Bryan Blehm. On November 30, defendants were made aware of the Order to show cause hearing date at the above date and time.

Daniel J McCauley III, appears specially for Defendants to challenge the service of said Order to show cause on the grounds that service of process of the Order on Defendants was not effected. At no time did Defendants waive service of process of the Order to Show cause.

### Legal Standard

The court in *Richards v. Superior Court of Yavapai*, 22 Ariz. App. 66 (Ariz. Ct. App. 1974) outlined that an order denying a motion to quash "[i]s not appealable, *Herzog v. Reinhardt, 2 Ariz. App.* 103, 406 P.2d 738 (1965), and the relief sought is based on a claim that the trial court exceeded its jurisdiction or abused its discretion, review by special action is appropriate."

Rule 4 of Arizona Rules of Procedure for Special Actions states:

The summons and complaint and Order to show cause, if any, shall be served as process is served under Rules 4, 4.1 or 4.2, as applicable, of the Rules of Civil Procedure, unless the court otherwise specifies the manner and time within which service shall be made.

Ariz. R. P. Spe. Act. 4

Rule 8 - Order to Show Cause Hearing and Procedure states:

(a) An order to show cause hearing on the law and motion calendar shall be limited to fifteen minutes, to be shared equally by the opposing parties. If a party anticipates the hearing will require more than the allotted time, he shall inform the court or clerk so that the matter may be scheduled for hearing at another time.

(b) Where service of process was not effected, the Order to show cause shall not be continued or rescheduled, but shall be quashed, unless all parties agree to proceed with the hearing or to continue it to a date and time certain.

L. R. Prac. Sup. Ct. 8

### Argument

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In the case *sub judice*, Plaintiff failed to cause service of the Order to Show Cause on Defendants in accordance with Ariz. R. P. Spe. Act. 4 and L. R. Prac. Sup. Ct. 8. At no time did Defendants wave their right to service. THEREFORE pursuant L. R. Prac. Sup. Ct. 8 (b) where service of process was not effected, the Order to show cause <u>shall not</u> be continued or rescheduled, but <u>shall be quashed</u>.

### **<u>Conclusion</u>**

Based on the authority Ariz. R. P. Spe. Act. 4 and L. R. Prac. Sup. Ct. 8 and the foregoing facts showing service of process of the Order to show cause not effected on Defendants, the court should grant Defendant's motion to quash service of said Order.

Dated: December 1, 2022

_____
Daniel J McCauley III,
Attorney for Defendants

3

1   Daniel J McCauley III
    McCauley Law Offices, P.C.
2   6638 E Ashler Hills Dr
3   Cave Creek, AZ 85331-6638
    Direct: 480-595-1378
4   Fax: (866) 388-3788 | Email: dan@mlo-az.com

5   *Attorneys for Defendants*
    *Tom Crosby, Ann English, and Peggy Judd,*
6   *In their official capacities as the Cochise County Board of Supervisors*

7

8               IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
                    IN AND FOR THE COUNTY OF COCHISE
9

10   KATIE HOBBS, in her official capacity          Case No.: CV2022005523
     as Arizona Secretary of State,
11                                                  **[PROPOSED] ORDER**
                        Plaintiffs,
12
             v.
13   TOM CROSBY, ANN ENGLISH,
     PEGGY JUDD, in their official capacities
14   as members of the Cochise County Board
     of Supervisors, and COCHISE COUNTY,
15   a political Subdivision of Arizona
16
                        Defendants.

17          The written motion of the Defendant for Defendants Tom Crosby, Ann English, and

18   Peggy Judd, In their official capacities as the Cochise County Board of Supervisors to quash

19   service of Plaintiff Katie Hobbs Order to show cause, in the above-entitled matter, have been duly

20   presented and filed, it is established, as provided in Ariz. R. P. Spe. Act. 4 and L. R. Prac. Sup.

21   Ct. 8 (b) where service of process was not effected, the Order to show cause shall not be

22   continued or rescheduled, but shall be quashed.

23          **THEREFORE IT IS HEREBY ORDERED** that Defendant's motion to quash service of

24   the Order to show cause is granted.

25          **IT IS SO ORDERED.**

26

27   Dated: _____

28          Judge of the Superior Court

                                        4

1

2

**PROOF OF SERVICE**

3      I, Daniel J McCauley III, am over the age of 18 and not a party to this action.

4   I am a resident of or employed in the county where the electronic service occurred; my

5   business/residence address is:  6638 E Ashler Hills Dr Cave Creek, AZ 85331-6638

6      On the date below, I filed a true and correct copy of the original of the attached

7   documents with the Clerk of the Superior Court in Cochise County. I served the foregoing

8   document(s) to the fax number below described as:

9

10  **COCHISE COUNTY DEFENDANTS' MOTION TO QUASH SERVICE OF
    PLAINTIFF'S APPLICATION FOR ORDER TO SHOW CAUSE; MEMORANDUM;
    DECLARATION & [PROPOSED] ORDER ISO**

11

12      The following party was served:
        D. Andrew Gaona, Esq. Attorneys for Plaintiffs

13      Fax:  (602) 224-6020

14

15      I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is

16  true and correct.

17  Dated: December 1, 2022

18                                    _____
                                      Daniel J McCauley III,
19                                    Attorney for Defendants

20

21

22

23

24

25

26

27

28

5

1    Daniel J McCauley III
     McCauley Law Offices, P.C.
2    6638 E Ashler Hills Dr
     Cave Creek, AZ 85331-6638
3    Direct: (480) 595-1378
     Fax: (866) 388-3788 | Email: dan@mlo-az.com
4

5    *Attorneys for Defendants*
     *Tom Crosby, Ann English, and Peggy Judd,*
6    *In their official capacities as the Cochise County Board of Supervisors*

7

8
                    IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
9                       IN AND FOR THE COUNTY OF COCHISE

10

11   KATIE HOBBS, in her official capacity        Case No.: CV 202200553
     as Arizona Secretary of State,               *Hon. Casey McGinley Division IV Courtroom*
12
                    Plaintiffs,                    **MOTION FOR NOTICE OF
13                                                 CHANGE OF JUDGE**
             v.
14                                                 Date: 12/01/2022
     TOM CROSBY, ANN ENGLISH,                      Time: 1:00 PM
15   PEGGY JUDD, in their official capacities      Phone: 520-432-8500
     as members of the Cochise County Board
16   of Supervisors, and COCHISE COUNTY,
     a political Subdivision of Arizona
17
                    Defendants.
18
                                      **MOTION**
19
             Pursuant to Ariz. R. Civ. P. 42.1 defendants Tom Crosby, Ann English, and Peggy Judd,

20   In their official capacities as the Cochise County Board of Supervisors (collectively

21   "Defendants") hereby exercises the right to change of Judge in this matter. The name of the Judge

22   to whom this matter is the Honorable Casey McGinley. This notice is timely under Rule 42.1(c).

23   No waiver has occurred under Rule 42.1(d). Defendant has not been granted a change of a judge

24   as a matter of right previously in the action.

25

26   Dated: December 1, 2022

27                                        _____
                                          Daniel J McCauley III,
28                                        Attorney for Defendants

                                              1

1   Daniel J McCauley III
    McCauley Law Offices, P.C.
2   6638 E Ashler Hills Dr
3   Cave Creek, AZ 85331-6638
    Direct: (480) 595-1378
4   Fax: (866) 388-3788 | Email: dan@mlo-az.com

5   *Attorneys for Defendants*
    *Tom Crosby, Ann English, and Peggy Judd,*
6   *In their official capacities as the Cochise County Board of Supervisors*

7

8

9                    IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
                          IN AND FOR THE COUNTY OF COCHISE
10

11  | KATIE HOBBS, in her official capacity | Case No.: CV 202200553 |
    | as Arizona Secretary of State, | *Hon. Casey McGinley Division IV Courtroom* |

12  |                          Plaintiffs, | **AFFIDAVIT IN SUPPORT OF MOTION FOR** |
13  |                                      | **NOTICE OF CHANGE OF JUDGE** |
    |               v.                     |                          |
14  | TOM CROSBY, ANN ENGLISH, | Date: 12/01/2022 |
    | PEGGY JUDD, in their official capacities | Time: 1:00 PM |
15  | as members of the Cochise County Board | Phone: 520-432-8500 |
    | of Supervisors, and COCHISE COUNTY, |                          |
16  | a political Subdivision of Arizona |                          |
17  |                          Defendants. |                          |

18          I, Daniel J McCauley III, declare that I have personal knowledge of the facts contained in

19  this affidavit, and if called as a witness, I could and would testify competently to the facts as

20  stated herein.

21          The Honorable Casey McGinly, the judge presiding over the case *sub judice.* I believe that

22  Defendants can not have a fair and impartial trial or a hearing before this Judge.

23          I declare under penalty of perjury under th laws of the State of Arizona that the foregoing

24  is true and correct.

25

26  Dated: December 1, 2022

27                                          _____
                                            Daniel J McCauley III,
28                                          Attorney for Defendants

                                            2

1  Daniel J McCauley III
2  McCauley Law Offices, P.C.
   6638 E Ashler Hills Dr
3  Cave Creek, AZ 85331-6638
   Direct: (480) 595-1378
4  Fax: (866) 388-3788 | Email: dan@mlo-az.com

5  *Attorneys for Defendants*
   *Tom Crosby, Ann English, and Peggy Judd,*
6  *In their official capacities as the Cochise County Board of Supervisors*

7

8
                    IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
9                       IN AND FOR THE COUNTY OF COCHISE

10

11  | KATIE HOBBS, in her official capacity as Arizona Secretary of State, | Case No.: CV 202200553 |

KATIE HOBBS, in her official capacity as Arizona Secretary of State,

12                     Plaintiffs,

13          v.

14  TOM CROSBY, ANN ENGLISH,
    PEGGY JUDD, in their official capacities
15  as members of the Cochise County Board
    of Supervisors, and COCHISE COUNTY,
16  a political Subdivision of Arizona

17              Defendants.

Case No.: CV 202200553
*Hon. Casey McGinley Division IV Courtroom*

**ORDER AND NOTICE OF CHANGE OF JUDGE**

18          The written motion of the Defendants Tom Crosby, Ann English, and Peggy Judd, In their

19  official capacities as the Cochise County Board of Supervisors for the Notice of Change of Judge

20  of the Honorable Casey McGinley of the above-captioned Court, and the supporting affidavit

21  under penalty of perjury of Daniel J McCaulley III, have been duly presented and filed. It is

22  established, as provided in Ariz. R. Civ. P. 42.1 that the Honorable Casey McGinley, is

23  prejudiced against the Defendants or the interest of that party in the above-entitled matter.

24          THEREFORE, IT IS HEREBY ORDERED that the Honorable Casey McGinley is

25  relieved from HIS assignment as a judge in the above-entitled matter, and from any and all other

26  assignments in this cause, and that the hearing shall proceed before the Honorable

27  _____, in Department _____ of this court, at the time now set for

28

                                          3

1   the hearing.

2        **IT IS SO ORDERED.**

3

4   Dated: _____

5        Judge of the Superior Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, Daniel J McCauley III, am over the age of 18 and not a party to this action. I am a resident of or employed in the county where the electronic service occurred; my business/residence address is:  6638 E Ashler Hills Dr Cave Creek, AZ 85331-6638

On the date below, I filed a true and correct copy of the original of the attached documents with the Clerk of the Superior Court in Cochise County. I served the foregoing document(s) to the fax number below described as:

**MOTION FOR NOTICE OF JUDGE CHANGE, AFFIDAVIT IN SUPPORT OF MOTION AND [PROPOSED] ORDER ISO**

The following party was served:
D. Andrew Gaona, Esq. Attorneys for Plaintiffs
Fax:  (602) 224-6020

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct.

Dated: December 1, 2022

_____
_____
Daniel J McCauley III,
Attorney for Defendants

5

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| KATIE HOBBS, in her official capacity as Arizona Secretary of State, | TOM CROSBY, ANN ENGLISH, PEGGY JUDD, in their official capacities as members of the Cochise County Board |

| (b) County of Residence of First Listed Plaintiff  Marricopa | County of Residence of First Listed Defendant  Cochise |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Daniel J McCauley III McCauley Law Offices, P.C. 6638 E Ashler Hills Dr Cave Creek, AZ 85331-6638 Direct: (480) 595-1378 | Roy Herrera 032907 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [x] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1  Original Proceeding
- [x] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TITLE 52—VOTING AND ELECTIONS

Brief description of cause:
Were machines tested by approved laboratories accredited under the Help America Vote act of 2002, pursuant to Ariz. Rev. Stat. § 16-442?

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 12/01/2022 | s/ Daniel J McCauley III |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions</u>.

**V.    Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.